UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TED WRIGHT, d/b/a ROADSIDE
ASSISTANCE and ROBERT
PETROFF,

        Plaintiffs,

-vs-

COUNTY OF GENESEE, a governmental
entity, CAPTAIN CHRISTOPHER
SWANSON, individually and in his official
capacity as supervisor, and ROBERT J.
PICKELL, individually and in his official
capacity as Sheriff of Genesee County,

Case No. 08-11066

Honorable Sean F. Cox
Magistrate Judge Virginia Morgan

_____/

ROBERT L. SWARTWOOD PLLC
Robert L. Swartwood P59493
Andrew L. Campbell P64391
Attorneys for Plaintiff
164 W. Vienna Street, Suite #1
Clio, MI 48420
810-397-3151

GAULT DAVISON P.C.
F. Robert Schmelzer P23062
Co-Counsel for Plaintiffs
G-8455 S. Saginaw, Suite 2
Grand Blanc, MI 48439
810-234-3633
fschmelzer@gaultdavison.com

PLUNKETT COONEY
H. William Reising P19343
Attorneys Defendants
111 E. Court Street, Suite 1B
Flint, MI 48502
810-342-7001
wreising@plunkettcooney.com

_____/

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

NOW COME, Defendants, County of Genesee, Captain Chris Swanson and Sheriff Robert Pickell, by and through their attorneys, Plunkett Cooney, and move this Honorable Court for Summary Judgment pursuant to Fed. R. Civ. P. 56(C) for the following reasons:

1.      Plaintiffs instituted this action against Defendants with the filing of the Complaint on or about March 12, 2008.

2.      The factual basis concerning the Complaint essentially involves a towing company that was on the "No Preference Wrecker Call List" ("the list") for Genesee County. Because another towing company was added to the list, in the same township as Plaintiffs, and because Plaintiffs were ultimately removed from the list, they brought suit against Defendants alleging the following counts:

(1)     Fifth Amendment violation of constitutional rights;

(2)     Procedural due process violations;

(3)     Intentional interference with prospective  contractual relations between Plaintiff and customers;

(4)     Intentional interference with prospective  contractual relations between Plaintiff and an individual;

(5)     Intentional interference with prospective  contractual relations between Plaintiffs.

3.      As set forth more fully in the brief in support of this motion, Plaintiffs will be unable to prove that Defendants required them to relinquish a constitution right in violation of the due process clause of the U.S. Constitution.

2

4.      Plaintiffs cannot establish a due process claim because they cannot demonstrate the requisite property interest necessary to sustain such a claim.

5.      Plaintiffs will be unable to show that there was interference with contractual relations as the operation of a police department is a governmental function for purposes of immunity from tort liability.

6.      As such, Defendants are entitled to summary judgment as a matter of law.

7.      Concurrence in the motion was sought and requested by counsel for Defendants through the course of many conversations during which concurrence could not be obtained.

WHEREFORE, Defendants, County of Genesee, Captain Chris Swanson and Sheriff Robert Pickell pray this Honorable Court grant their Motion for Summary Judgment together with such additional relief this Court deems just and proper.

By:     s/ H. William Reising
        H. William Reising P19343
        Brian T. McGorisk P44353
        PLUNKETT COONEY
        Attorney for Defendants
        111 E. Court St., Ste 1B
        Flint, MI 48502
        810-342-7001
Dated: January 12, 2009              wreising@plunkettcooney.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TED WRIGHT, d/b/a ROADSIDE
ASSISTANCE and ROBERT
PETROFF,

Case No. 08-11066

Honorable Sean F. Cox
Magistrate Judge Virginia Morgan

Plaintiffs,

-vs-

COUNTY OF GENESEE, a governmental
entity CAPTAIN CHRISTOPHER
SWANSON, individually and in his official
capacity as supervisor, and ROBERT J.
PICKELL, individually and in his official
capacity as Sheriff of Genesee County,

_____/

ROBERT L. SWARTWOOD PLLC
Robert L. Swartwood P59493
Andrew L. Campbell P64391
Attorneys for Plaintiff
164 W. Vienna Street, Suite #1
Clio, MI  48420
810-397-3151

PLUNKETT COONEY
H. William Reising P19343
Attorneys Defendants
111 E. Court Street, Suite 1B
Flint, MI  48502
810-342-7001
wreising@plunkettcooney.com

GAULT DAVISON P.C.
F. Robert Schmelzer P23062
Co-Counsel for Plaintiffs
G-8455 S. Saginaw, Suite 2
Grand Blanc, MI  48439
810-234-3633
fschmelzer@gaultdavison.com

_____/

**DEFENDANTS' BRIEF IN SUPPORT OF THEIR
MOTION FOR SUMMARY JUDGMENT**

## QUESTIONS PRESENTED

1.    **Is Genesee County entitled to immunity granted by law?**

    Defendants' Answer:  Yes

    Plaintiffs' Answer:  --

2.    **Are Defendants Captain Swanson and Sheriff Pickell entitled to qualified immunity?**

    Defendants' Answer:  Yes

    Plaintiffs' Answer:  --

3.    **Did Defendants violate the due process rights of Plaintiffs?**

    Defendants' Answer:  No

    Plaintiffs' Answer:  --

4.    **Did Defendants violate Plaintiffs' Fifth Amendment rights?**

    Defendants' Answer:  No

    Plaintiffs' Answer:  --

5.    **Did Defendants interfere with contractual relations of Plaintiffs?**

    Defendants' Answer:  No.

    Plaintiffs' Answer:  --

## INDEX OF AUTHORITIES

### CASES

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ............................................... 9

*Bailey v. Floyd County Bd. Of Educ.*, 106 F.3d 135, 141 (6th Cir. 1977) (quoting Wahl 408 U.S. at 577, 92 S.Ct. 2701) ....................................................................... 11

*Board of Regents of State Colleges v. Wahl*, 408 U.S. 564, 576, 92 S.Ct. 2701, 33 L.Ed. 2d 548 (1972) ..................................................................................... 11

*Chavez v. Martinez*, 538 U.S. 760, 123 S.Ct. 1994 (2003) ........................................ 12

*Celotez Corp. v. Catrett*, 477 U.S. 317, 325 (1986) .................................................. 8

*Higgason v. Stephens*, 288 F. 3d 868, 867 (6th Cir. 2002) ......................................... 11

*Jackson v. Leighton*, 168 F.3d 903, 909 (6th Cir. 1999) .......................................... 10

*Long v. Norris*, 929 F.2d 1111, 1114 (6th Cir.1991) ................................................. 12

*Lucas v. Monroe County*, 203 F3d 964 (6th Cir. 2000) ........................................... 11

*Mack v. City of Detroit*, 467 Mich. 186, 198 (2002) ................................................. 10

*Malley v. Briggs*, 475 U.S. 335, 341 (1986) ........................................................... 11

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) .............. 9

*Monell v. Department of Social Services*, 436 U.S. 658 (1978).................................... 9

*Odom v. Wayne County*, _____ Mich. _____, (December 30, 2008) ........................... 13

*Phillips v. Dmdeihn*, 213 Mich. App. 389, 400 (1995) .............................................. 12

*Poe v. Haydon*, 853 F.2d 418, 423 (6th Cir.1988) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) ..................................................................................................... 11

*Pohutski v. City of Allen Park*, 465 Mich. 675 (2002) ............................................... 15

*Pusey v. City of Youngs Town*, 11 F3d 652, 657 (Sixth Circuit 1993).............................. 10

*Saucier v. Katz*, 533 U.S. 194, 202 (2001) ............................................................. 11

*Williams v. Payne*, 73 F.Supp 2d 785, 794(e.d. Mich. 1999) …………………………………… 15

*Wilson v. Layne,* 526 U.S. 603, 609 (1999) ………………………………………………… 11

## STATUTES AND RULES

Fed. R. Civ. P. 56(C) …………………………………………………………………….. 8

Fed. R. Civ. P. 56(E) …………………………………………………………………….. 9

## I.  INTRODUCTION

Plaintiffs have filed this lawsuit against Defendants Captain Chris Swanson and Sheriff Robert Pickell, both individually and in their official capacities, as well as the County of Genesee, alleging a Fifth Amendment violation, procedural due process violations as well as intentional interference with prospective contractual relations between Plaintiffs, their purported customers and others.

Plaintiffs will be unable to establish a Fifth Amendment violation.  There was never any proceeding whereby the right was exercised.  Refusing to cooperate in an investigation does not give rise to a Fifth Amendment violation.  Plaintiffs had no property right in remaining on the list as a wrecker utilized by Genesee County therefore cannot show a due process violation either.

Plaintiffs further cannot show that there was an interference with any contractual relations.  As such, Defendants are entitled to summary judgment.

## II.  STATEMENT OF FACTS

### TOW PROVIDERS IN GENESEE COUNTY

The Plaintiffs, Ted Wright and Robert Petroff, worked for a towing company called Roadside Assistance.  Roadside Assistance was one of numerous towing companies within the county.

The Genesee County Sheriff's Department provides enforcement services for many townships including Vienna Township which is where the Plaintiffs' business was located. **(Exhibit 1 – Deposition of Christopher Swanson, p. 19)**.  As a necessary part of conducting business, the Genesee County Sheriff's Department at times required towing services for vehicles, specifically where the owners do not request a particular towing company.  Prior to

1

September 30, 2001, the agreement for enforcement services required that the department utilize companies located principally within Vienna Township. **(see Exhibit 2 – Enforcement Agreement, p. 8, ¶15)**. Subsequent enforcement services agreements between Vienna Township and the Sheriff's Department included no such requirement, and in 2005 Vienna Township gave the Sheriff's Department sole discretion as to who could be used as a towing provider.

The Sheriff's Department had a protocol for contacting towing companies in townships where they were providing enforcement services. **(Exhibit 1 – Capt. Swanson's deposition, p. 24)**. The dispatcher would contact a towing company, where one was necessary, based on an initial request from the deputy at the scene. Otherwise, the towing companies were contacted based on criteria put out by the Sheriff's Department and based on a preference list. **(see Exhibit 3 – Memorandum Regarding Towing Companies Dated May 9, 2003)**.

From 2001 until 2005 Roadside Assistance was the primary towing company in Vienna Township. In late 2005, another company, Leonard's Towing, requested to be placed in the rotation for the Vienna Township tows. Thus, there were two companies, including the Plaintiffs, that were competing for the same area or within a common jurisdiction. **(Exhibit 1 – Swanson Deposition, p. 27)**.

Leonard's Towing had applied to the Sheriff's Department with all the necessary criteria and as of December 21, 2005 was put on the list such that it would alternate tows with the Plaintiffs' company. **(see Exhibit 4 – Memorandum dated 12-21-05)**.

## THE DISPUTE

From the day Leonard's Towing was put on the dispatch list for Vienna Township, there arose an ongoing feud between the owners of Leonard's Towing and the Plaintiffs.

2

There was no contract with any of the tow companies and it was always the discretion of the Sheriff's Department as to who would be on the list. **(Exhibit 1 – Swanson Deposition, p. 37)**. Instead of using just one preferred company within Vienna Township at that point in time, it was decided to alternate between towing companies to keep it "fair." **(Exhibit 1 – Swanson deposition, p. 38)**.[1]

In May of 2006, because of the ongoing feud between Roadside and Leonard's, concerning the alternating towing, Capt. Swanson drafted an express policy concerning wreckers providing services within Genesee County. **(see Exhibit 5 – Wrecker Dispatch Policy)**. Capt. Swanson explained that the reason for preparing such a policy resulted from the "bitter battle" between Roadside and Leonard's Towing. **(see Exhibit 1 – Swanson deposition, p. 40)**. In fact, it was the only township which presented a problem within the county because of these two companies.[2]

The Wrecker Dispatch Policy was something with which all tow companies within the county had to comply. The Wrecker Dispatch Policy included some important provisions:

> This policy outlines standards, operational procedures and documentation that are required of wrecker (vehicle towing) services which are included in this office's no preference call list. Including are guidelines to provide for the efficient and equitable delivery of qualified and courteous towing services to protect the safety of people and property.

*      *      *

---

[1] If the Sheriff's Department had maintained one preferred towing company, in light of Leonard's Towing requesting to be put on the list, then the Sheriff's Department would certainly have been faced with another lawsuit claiming there was an arbitrary and capricious decision regarding which tow company was preferred.
[2] The Wrecker Dispatch Policy is very similar to that which had already been set up by the Michigan State Policy Central Dispatch No Preference List and which required towing companies to comply with certain requirements in order to be on the No Preference List.

The wrecker service shall abide by all laws when responding to a dispatch, including, but not limited to, when towing vehicles. This includes equipment and traffic laws.

The wrecker service shall be physically located and staffed within the township as to which the service requests placement on the call list. Post office box numbers shall not be accepted. All necessary equipment and storage facilities shall be located in that township. Exceptions may be made for specialized equipment needs as dictated by unusual conditions.

\*        \*        \*

Drivers and other representatives of the wrecker service shall exhibit professional and courteous service to the public.

\*        \*        \*

Reasonable rates based on industry standards shall be used for all services provided.

\*        \*        \*

The wrecker service shall neither conceal nor misrepresent any material facts when applying for placement on the call list or performing services when dispatched.

\*        \*        \*

In consideration for placement on the sheriff's office no preference wrecker service call list, the undersigned wrecker service understands and agrees to adhere to the above requirements and conditions. Failure to comply with all these requirements or misrepresented or falsified information shall be cause for removal from the wrecker call list.

**(Exhibit 5 – Wrecker Dispatch Policy)**

The above policy is important as it later formed the basis by which Plaintiffs were

ultimately removed from the list.

4

Both Plaintiffs admitted that they were aware of the Wrecker Dispatch Policy and understood they needed to comply with it.  Mr. Wright even admitted that he violated it by going to a crime scene/accident scene when he wasn't called:

Q.    Okay.  The incident that we are speaking about where you showed up to a crime scene or an accident scene where you were not dispatched, that took place after you signed this policy; right?  True?

A.    True.

Q.    Okay.  You would agree with me showing up to a crime scene or an accident scene was a violation of this policy; true?

                        *        *        *

Q.    Isn't that true?

A.    No.

Q.    Why wasn't it a violation?

                        *        *        *

A.    You are trying to make me look like the bad guy here and this ain't going to work.

Q.    No.  Isn't that true that you went to the accident scene when you weren't called, you admitted that?

A.    That's true, yup.

Q.    Alright.  And you signed an agreement saying that you were going to comply with all these things on here; true?

A.    True.

Q.    Okay.  And you would agree with me showing up to an accident scene where you are not called would be a violation of the towing policy; right?

Mr. Campbell:  Objection, cause for a legal conclusion.  Answer the question.

A.      Yes.

**(Exhibit 6 – Ted Wright deposition, pp. 75-76)**.

Thus, Mr. Wright admitted that he had signed the policy, and acknowledged he was

required to comply with it and later violated it. Mr. Petroff who was an employee/driver for the

company, also admitted that he was aware of the policy and that he was required to comply with

it. **(Exhibit 7 – Robert Petroff deposition, p. 29)**.

The problems with Roadside Assistance continued and in February of 2007, when Mr.

Wright had again jumped a tow, Captain Swanson sent out a last chance notification indicating

that Roadside Assistance would be permanently removed from the tow list if it did not comply.

**(See Exhibit 8 – Letter from Capt. Swanson to Plaintiff, Ted Wright)**.

Two further incidents ultimately led to Roadside Assistance being removed from the list.

The first came during an altercation between Mr. Wright and a customer who wrote a letter to the

Sheriff's Department complaining in how he was treated when he went to recover his vehicle.

The customer, Bob Delecki, wrote a letter indicating that Mr. Wright was rude, belligerent and

used profanity in refusing a request that Mr. Delecki be able to cover his vehicle to keep it out of

the rain. **(see Exhibit 9 – Letter from Bob Delecki to Sheriff's Department)**.

Finally, a decision was made to remove Roadside from the list when the Plaintiff Robert

Petroff refused to cooperate in an investigation involving his vehicle being stolen. Capt.

Swanson explained the decision to remove Roadside Assistance from the list:

A.      Once Sergeant Dwyre had done his investigation and brought it to me that
        the complainant was uncooperative, I called Teri Skidmore at Clio
        Chrysler and that's dated 12-3-07. Based on his conversation between me
        and Teri Skidmore, Sergeant Dwyre's interpretation as to what's going on,
        I authored a letter to Petroff giving him one opportunity to clarify and just
        for the record clear up why we needed to talk to him.

6

Q.    Understood.  And is that the letter of the same date, December 3, 2007?

A.    That is correct.

                    *        *        *

Q.    Were you aware when you wrote (Exhibit) 26 that Mr. Petroff had in fact
      honored a first appointment with an investigator but that his legal counsel
      had intervened some ten minutes into the conversation?

A.    Yes and no.  I was aware that he said he would come in to interview but
      not into the conversation did Terry Adler say.  He called ten minutes after
      the conversation and said he would not be there.

                    *        *        *

Q.    Okay.  And Adler said no?

A.    I don't know the conversation between him and Sergeant Dwyre but it was
      reported to me that Terry Adler would not allow his, at that point, client
      for whatever reason, the complainant, to submit to an interview.

                    *        *        *

Q.    Got you.  Okay.  To your knowledge, again I'm asking a legal conclusion,
      if this is inappropriate, tell me, is a complainant required to be interviewed
      without the benefit of counsel in your understanding?

A.    Yes.

Q.    If they elect counsel is it appropriate to honor that request by your
      understanding?  If they elect to have counsel present, I didn't complete it.

A.    It's my understanding no, unless they are the focus of the investigation as
      a suspect, then of course we can't violate their 5th Amendment rights.  But
      if a victim simply refuses to cooperate in an investigation and not answer
      questions, that would be seen inappropriate.

Q.    As of the date you wrote this letter did you form an opinion whether or not
      Robert Petroff was a suspect?

A.    We hadn't even gotten that far.

7

Q.     You had no opinion then as to whether he was a suspect?

A.     It's highly suspicious but he is not considered a formal suspect since we haven't gotten beyond the point of talking to the owner of the vehicle. Because that happened, it's highly suspicious why he would not want to cooperate with the investigation when he in fact is the one who reported it.

**(Exhibit 1, Swanson deposition, pp. 99-102)**.

Capt. Swanson further indicated the reason they were removed from the list:

A.     But because of his relationship as a tow provider not cooperating with the agency that is in agreement with him to provide service, with all the history, was the determining factor to show that he is no longer appropriate for us to put in contact with the people we serve.

**(Exhibit 1, Swanson deposition, pp. 103-104)**.

After Mr. Petroff refused, as a complainant, to appear for an interview, without a lawyer,

Capt. Swanson sent a letter to him indicating Roadside Assistance was no longer on the list. **(see**

**Exhibit 10 – Letter dated December 2, 2007)**.

After they were removed from the list, Plaintiffs threatened a lawsuit and ultimately

brought the subject one alleging Defendants should be responsible for damages.

### III.  MOTION STANDARD

Under Rule 56(C) Fed. R. Civ. P., summary judgment may be granted "If the pleadings,

depositions, answers to interrogatories, and admissions, together with the affidavits, if any, show

that there is no genuine issue as to material fact and that the moving party is entitled to judgment

as a matter of law." The moving party need not produce evidence showing the absence of a

genuine issue of material fact. Rather, "The burden on the moving party may be discharged by

'showing' – that is, pointing out to the district court – that there is an absence of evidence to

support the non-moving party's case. *Celotez Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once

8

the moving party discharges that burden, the burden shifts to the non-moving party to set forth specific facts showing a genuine triable issue. Fed. R. Civ. P. 56(E). To create a genuine issue of material fact, however, the non-movant must do more than present some evidence on a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), "[t]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the [non-movant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.* At 249-50 (Citations Omitted) see Celotx Corp., 477 U.S. at 322-23 and *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Moreover, "the mere existence of some alleged factual dispute between the parties will not defeat and otherwise properly support a motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson* at 247-48. Consequently, the party opposing the motion must do more than raise some doubt as to the existence of a fact. The non-moving party must produce evidence that would be sufficient to require submission of the factual dispute to the jury. In the absence of such evidence, the moving party is entitled to judgment as a matter of law.

## IV. DEFENDANTS ARE ENTITLED TO IMMUNITY

A.   Official Capacity/Federal Claims:

To the extent Plaintiffs have asserted federal claims against Defendants in their official capacity, they need to be examined under the standard set forth *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

A claim against an individual in his or her official capacity is equivalent to a lawsuit directed against the public entity which that individual represents. *Pusey v. City of Youngs*

9

*Town*, 11 F3d 652, 657 (Sixth Circuit 1993). In an official capacity action, the plaintiff seeks

damages not from the individual officer, but from the entity for which the officer is an agent. *Id*

As such, Plaintiffs' claims must be evaluated under the standard applicable to the municipality.

"actions against municipalities require satisfaction of certain special elements, including proof

(1) that the municipality pursued an official customer policy... and (2) that such official policy

or custom was adopted by the official makers of policy with 'deliberate indifference' towards the

constitutional rights of persons effected by the policy or custom."

Here, Plaintiffs clearly have failed to properly allege and have not established claims

against the individual Defendants in their official capacity to satisfy the standard set forth in

*Monell*.

B.      Individual Capacity/Federal Claims:

Plaintiffs have also asserted claims against Captain Swanson and Sheriff Pickell in their

individual capacities. (Complaint ¶4-7). As governmental officials, Sheriff Pickell and Capt.

Swanson are entitled to qualified immunity when making discretionary decisions, like a decision

of which towing services the Sheriff's Department will utilize. The Sixth Circuit has explained:

> Under the Doctrine of Qualified Immunity, governmental officials engaged in
> discretionary functions are generally shielded from liability for civil damages
> insofar as their conduct does not violate clearly established statutory or
> constitutional rights of which a reasonable person would have known. A
> defendant is not entitled to qualified immunity if the plaintiff asserts a violation of
> a known civil constitutional right, and the constitutional right was so clearly
> established at the time in question that a reasonable official in the defendant's
> position would have known that he was violating the plaintiff's constitutional
> rights. Before examining the reasonableness of defendant's conduct in light of a
> clearly established constitutional right, however, we must first determine whether
> [the plaintiff] has made out a claim for violation of his constitutional rights at all.
> A necessary concomitant to the determination of whether the constitutional right
> asserted by plaintiff is clearly established at the time the defendant acted is the
> determination of whether the plaintiff has asserted a violation of a constitutional

10

right at all.  Only after the court makes this determination does it consider whether this right was clearly established.  *Jackson v. Leighton*, 168 F.3d 903, 909 (6th Cir. 1999) (Citations omitted).

Thus, in order to establish their claims, Plaintiffs must demonstrate that the conduct of Capt. Swanson and Sheriff Pickell violated a constitutional right, and that a reasonable person would have known such conduct was a violation of such right.  Both Defendants are entitled to qualified immunity as to the constitutional claims should Plaintiffs fail in either respect.

Pursuant to *Saucier v. Katz*, 533 U.S. 194, 202 (2001), "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted....If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate."

"Qualified immunity grants government officials engaged in discretionary activities immunity from individual liability for civil damages unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Higgason v. Stephens*, 288 F. 3d 868, 867 (6th Cir. 2002)*; See, also, Poe v. Haydon,* 853 F.2d 418, 423 (6th Cir.1988) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).  The entry of a summary judgment is appropriate when the law does not put a governmental official on notice that the actionable conduct is clearly unlawful.  *Saucier Id* at 201. .

A court's initial task in evaluating a qualified immunity defense is to determine whether the plaintiff has alleged the deprivation of a constitutional right. *Wilson v. Layne,* 526 U.S. 603,

609 (1999). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id.* If the Court determines no statutory or constitutional right has been violated, the inquiry ends and qualified immunity applies.

If the violation of a right could be found based on the parties' submissions, the next step is to determine whether that right was clearly established. *Id.* To be clearly established, "the law must be clear in regard to the official's particular actions in the particular situation." *Long v. Norris*, 929 F.2d 1111, 1114 (6th Cir.1991). While replication of the official's specific conduct is not required to overcome qualified immunity, "'pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances.'" *Saylor v. Board of Educ.*, 118 F.3d 507, 515 (6th Cir.1997) (quoting *Lassiter v. Alabama A & M Univ.*, 28 F.3d 1146, 1150 (11th Cir.1994) (en banc)).

As such, the individual Defendants, who were sued in their individual capacities, are entitled to qualified immunity under the standard set forth *Saucier*. Defendant County of Genesee is likewise entitled to dismissal of any federal claims under the *Monell* standard.

As set forth below, Plaintiffs cannot establish that Defendants violated any of their constitutional rights, nor could a reasonable person have known such conduct, even as alleged, would be a violation of such rights. As such Defendants are immune from the claims and summary judgment is appropriate.

## V.  THERE WAS NO FIFTH AMENDMENT VIOLATION
## OR DUE PROCESS VIOLATIONS

Plaintiffs included in their first count that Defendants violated Mr. Petroff's constitutional rights against self-incrimination and the right not to be deprived of life, liberty or property without due process of law.  Plaintiffs claim that because Roadside Assistance was taken off the list and it was done so in retaliation for Petroff deciding to exercise his right against self-incrimination that they suffered economic injury.

In the Complaint Plaintiffs had specifically alleged under Count I that there was a violation of a right against self-incrimination as well as a right not to be deprived of life, liberty or property without due process of law.

The courts have long recognized that remaining on a call list such as the one at issue is not a protected property interest.  Merely claiming a right to receive a certain class of business referrals from the local government does not give rise to a situation where the imposition of procedural due process protections are necessary.  In *Lucas v. Monroe County*, 203 F.3d 964 (6th Cir. 2000), the courts considered a similar claim by which a wrecker service operator brought suit alleging that remaining on a list used by the sheriff's department in referring towing service calls was a protected property interest giving rise to due process protection.  The court in considering the due process claim stated:

> "The fourteen amendment's procedural protection of properties a safe guard of
> the security of interest that a person has already acquired and specific benefits."
> *Board of Regents of State Colleges v. Wahl*, 408 U.S. 564, 576, 92 S.Ct. 2701, 33
> L.Ed. 2d 548 (1972).  The mere unilateral expectation of continuing to receive a
> benefit is not enough to create a protected property interest; instead "legitimate
> claim of entitlement" must exist.  *Id.* at 577, 92 S.Ct. 2701.  "[A] property interest
> exists and its boundaries are defined by 'rules and understands that stem from an
> independent source such as state law – rules or understandings that secure certain
> benefits and would support claims of entitlement to those benefits.'" *Bailey v.*

13

*Floyd County Bd. of Educ.*, 106 F.3d 135, 141 (6th Cir. 1977) (quoting *Wahl* 408 U.S. at 577, 92 S.Ct. 2701).

203 F.3d at 978.

The court went on to find that the plaintiff's claim of entitlement and remaining on the tow list did not create a claim for due process violations as they failed to establish the existence of a constitutionally protected property interest.

In this case, the same reasoning applies and any allegation that Plaintiffs were deprived of a right without due process of law is without merit as claiming a right to receive a certain class of business referrals from their local government is not a properly protected interest for which due process would apply.

As to Plaintiffs' claim involving a violation of the Fifth Amendment right of self-incrimination, the privilege against self-incrimination under the state constitution is no more extensive than the privilege afforded by the Fifth Amendment of the United States Constitution. *Phillips v. Dmdeihn*, 213 Mich. App. 389, 400 (1995). Further, in order to assert the privilege one must do so to the appropriate tribunal at an appropriate time. The amendment requires that no person shall be compelled in any criminal case to be a witness against themselves. *Chavez v. Martinez*, 538 U.S. 760, 123 S.Ct. 1994 (2003). However, there must be a criminal case or at least the initiation of legal proceedings in order for the privilege to be asserted. *Id*. at 767. Police questioning does not constitute a case. *Id*.

Here, there certainly was no criminal case as the Sheriff's Department merely was investigating a stolen vehicle, and had requested that Mr. Petroff appear for questioning. Thus, clearly there has been no Fifth Amendment violation.

14

## VI.  THERE IS NO LIABILITY FOR INTERFERENCE WITH CONTRACTUAL RELATIONS

Plaintiffs have also included three state law counts against Defendants alleging intentional interference with contractual relations between Plaintiff Ted Wright and his prospective customers, Plaintiff Ted Wright and a prospective buyer of his business as well as between the Plaintiffs themselves.

As a municipality, the County of Genesee is afforded broad immunity from state law tort claims. *Mich. Comp.* L691.1407(1).  Michigan law provides, in pertinent part:

> "except as otherwise provided in this act, the governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function.  Except as otherwise provided in this act, this act does not modify or restrict the immunity of the state from tort liability as it existed before July 1, 1965, which immunity is affirmed.

> *Mich. Comp.* L691.1407(1)

It is well settled that the operation of a police department/sheriff department is a governmental function.  *Williams v. Payne*, 73 F.Supp 2d 785, 794(e.d. Mich. 1999).  Therefore, Genesee County is entitled to immunity unless Plaintiffs' claims come under one of the statutory exceptions.  *Pohutski v. City of Allen Park*, 465 Mich. 675 (2002).

Further, the most recent pronunciation of the law relating to governmental immunity, *Odom v. Wayne County*, _____ Mich. _____, (December 30, 2008), the Court indicated that governmental employees are entitled to immunity from intentional-tort liability as long as the governmental employee establishes that the acts at issue were done during the course of employment and that the employee was acting reasonably or reasonably believed he was acting within the scope of his authority.  **(see Exhibit 11 – *Odom v. Wayne County*, p. 8.)**  The

15

employee must also establish that he was acting in good faith. The final element is determining

whether an individual is performing an act which was discretionary or ministerial in nature. If

discretionary, requiring personal deliberation, decision in judgment, it allows the employee to

resolve problems without constant fear of legal repercussions.

In this case, it is clear that Defendant, County of Genesee, was certainly engaged in

activity, running the Sheriff's Department, which was a governmental function.

Further, as to the decisions relating to the Wrecker Dispatch List, the named individual

Defendants clearly were within the course of their employment and authority. Further, based on

the undisputed testimony of Captain Swanson, it was certainly done in good faith and involved

discretionary decisions. As such, the individual Defendants are entitled to immunity granted by

law.

## VII.  CONCLUSION

Plaintiffs cannot establish any of their claims as to the named Defendants. Defendants

are protected by immunity granted by law. Plaintiffs claims for constitutional rights violations

are without merit. Being on the wrecker list is not a constitutionally protected property right.

Further, the decisions made by the individual Defendants concerning who was to be on the call

list are acts done within the scope of employment/authority and were done in the scope of

operating the police department. As such, the individual Defendants are entitled to qualified

immunity with regard to the constitutional claims.

WHEREFORE, Defendants, County of Genesee, Captain Chris Swanson and Sheriff

Robert Pickell pray this Honorable Court grant their Motion for Summary Judgment together

with such additional relief this Court deems just and proper.

16

By:   s/ H. William Reising

        H. William Reising P19343
        Brian T. McGorisk P44353
        PLUNKETT COONEY
        Attorney for Defendants
        111 E. Court St., Ste 1B
        Flint, MI 48502
        810-342-7001

Dated: January 12, 2009        wreising@plunkettcooney.com

17

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TED WRIGHT, d/b/a ROADSIDE
ASSISTANCE and ROBERT
PETROFF,

        Plaintiffs,

-vs-

COUNTY OF GENESEE, a governmental
entity CAPTAIN CHRISTOPHER
SWANSON, individually and in his official
capacity as supervisor, and ROBERT J.
PICKELL, individually and in his official
capacity as Sheriff of Genesee County,

Case No. 08-11066

Honorable Sean F. Cox
Magistrate Judge Virginia Morgan

_____/

| | |
|---|---|
| ROBERT L. SWARTWOOD PLLC<br>Robert L. Swartwood P59493<br>Andrew L. Campbell P64391<br>Attorneys for Plaintiff<br>164 W. Vienna Street, Suite #1<br>Clio, MI  48420<br>810-397-3151 | PLUNKETT COONEY<br>H. William Reising P19343<br>Attorneys Defendants<br>111 E. Court Street, Suite 1B<br>Flint, MI  48502<br>810-342-7001<br>wreising@plunkettcooney.com |

GAULT DAVISON P.C.
F. Robert Schmelzer P23062
Co-Counsel for Plaintiffs
G-8455 S. Saginaw, Suite 2
Grand Blanc, MI  48439
810-234-3633
fschmelzer@gaultdavison.com

_____/

## **DEFENDANTS' STATEMENT OF MATERIAL FACTS NOT IN DISPUTE**

1.     The county of Genesee is a governmental entity which engages in governmental

functions.

2.      Defendants Captain Chris Swanson and Sheriff Robert Pickell, at all relevant times pertaining to the allegations in the Complaint, were acting within the scope of their authority and within the scope of their employment.

3.      The Sheriff's department does not have a written contract with the Plaintiff or with any towing providers within the county.

4.      In Vienna Township, Roadside Assistance was a preferred towing provider from 2001-2005.

5.      Leonard's Towing requested to be placed on the no-preference call list in Vienna Township in 2005 and subsequently was placed on the list.

6.      In 2005, within Vienna Township, Roadside Assistance and Leonard's Towing alternated tows when dispatched by the Genesee County Sheriff's Department .

7.      Ted Wright and Robert Petroff work for Roadside Assistance.

8.      Defendant Captain Swanson, because of problems between Roadside Assistance and Leonard's Towing, created a no-preference call list, with requirements, for all towing providers within the county.

9.      Ted Wright and Robert Petroff acknowledged that they were required to comply with the policies on the list.

10.     Ted Wright admittedly violated the requirements on the list.

2

11.    After numerous problems with Roadside Assistance, including one of its

employees failing to cooperate in an investigation, was terminated from the list.

By:    s/ H. William Reising
       H. William Reising P19343
       Brian T. McGorisk P44353
       PLUNKETT COONEY
       Attorney for Defendants
       111 E. Court St., Ste 1B
       Flint, MI 48502
       810-342-7001
       wreising@plunkettcooney.com

Dated:  January 12, 2009

**CERTIFICATE OF
ELECTRONIC FILING**

H. William Reising certifies that a copy of Defendants' Motion for Summary Disposition, Brief in Support, accompanying documents and this
Certificate of Electronic Filing was electronically filed with the United States District Court, Eastern District of Michigan, in the above cause on
January 12, 2009, and that due to the mandatory court requirement that all attorneys use the electronic filing system, a copy will be provided to all
counsel of record by the court's notification.   I declare under the penalty of perjury that the above statement is true to the best of my knowledge,
information and belief.

S/ H. William Reising
H. William Reising P19343
Attorney for Defendants
Plunkett Cooney
111 E. Court St. Ste 1B, Flint, MI 48502
810-342-7001
wreising@plunkettcooney.com

Branches.06002.81230.1752705-1

3