## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

TED WRIGHT d/b/a ROADSIDE
ASSISTANCE and
ROBERT PETROFF,
                    Plaintiffs,                              Case No. 08-11066
                                                             Honorable Sean F. Cox
vs.                                                          Magistrate Judge Virginia M. Morgan

GENESEE COUNTY CORPORATION,
A governmental entity, CAPTAIN
CHRISTOPHER SWANSON, individually
and in his official capacity as supervisor, and
ROBERT J. PICKELL, individually and in his
Official capacity as Sheriff of Genesee County.
                    Defendants.

---

ROBERT L. SWARTWOOD PLLC              H. William Reising (P-19343)
Robert L. Swartwood (P-59493)        Attorneys for Defendants
Attorney for Plaintiffs              111 E. Court Street, Ste. 1B
164 W. Vienna St., Suite #1          Flint, MI 48502
Clio, MI 48420                       (810) 342-7001
(810) 686-7687

GAULT DAVISON, P.C.
F. ROBERT SCHMELZER (P-23062)
Co-Counsel for Plaintiffs
G-8455 S. Saginaw, Ste. 2
Grand Blanc, MI 48439
(810) 234-3633
PLUNKETT COONEY

ANDREW L. CAMPBELL (P-64391)
Attorney for Plaintiffs
164 W. Vienna Street, Suite #2
Clio, MI 48420
(810) 686-7440

---

## PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

NOW COMES, Plaintiffs, Robert Petroff and Ted Wright, by and through their attorneys, Gault Davison P.C., Robert L. Swartwood P.L.L.C. and Andrew L. Campbell, and for their response to Defendants' Motion for Summary Judgment state as follows:

1.    Admit.

2.    Admit in part, denied in part.  Plaintiffs admit that the Complaint involves a towing company that was on the "No Preference Wrecker Call List ('the list") for Genesee County.  Plaintiffs admit that the Plaintiffs claims stem in part from the fact that another tow company was added to the list, in the same township as Plaintiffs.  Plaintiffs further admit that Plaintiffs' claims are brought in part because Plaintiffs were removed from the list.  Plaintiffs emphatically deny that this case is merely a commercial matter.  Most of Plaintiffs damages stem from the retaliatory acts of Defendants in punishing Robert Petroff and infringing on his and Plaintiff Wrights statutory, contractual and constitutional rights.

   (1)    Admit.

   (2)    Admit.

   (3)    Admit.

   (4)    Admit.

   (5)    Admit.

3.    Denied.  Plaintiff can establish that Defendant provided no due process after terminating a property interest.

4.    Denied.  Plaintiffs had a property interest in continued employment.

5.    Denied.  Defendants acted without power and not within their scope of employment.  Defendants acted in bad faith.

2

6.    Denied.  Defendants are not entitled to summary judgment as a matter of law.

7.    Admit.

WHEREFORE, Plaintiffs, Robert Petroff and Ted Wright pray this Honorable Court

deny Defendants their Motion for Summary Judgment together with such additional relief

this Court deems just and proper.

Dated:  February 2, 2009                                    /s/ _____

                                                                      Andrew L. Campbell (P64391)
                                                                      Attorney for Plaintiffs
                                                                      164 W. Vienna Street, Suite #2
                                                                      Clio, MI  48420
                                                                      (810) 686-7440
                                                                      Hundy24@yahoo.com

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

TED WRIGHT d/b/a ROADSIDE
ASSISTANCE and
ROBERT PETROFF,
                    Plaintiffs,

vs.

Case No. 08-11066
Honorable Sean F. Cox
Magistrate Judge Virginia M. Morgan

GENESEE COUNTY CORPORATION,
A governmental entity, CAPTAIN
CHRISTOPHER SWANSON, individually
and in his official capacity as supervisor, and
ROBERT J. PICKELL, individually and in his
Official capacity as Sheriff of Genesee County.
                    Defendants.

---

ROBERT L. SWARTWOOD PLLC
Robert L. Swartwood (P-59493)
Attorney for Plaintiffs
164 W. Vienna St., Suite #1
Clio, MI 48420
(810) 686-7687

GAULT DAVISON, P.C.
F. ROBERT SCHMELZER (P-23062)
Co-Counsel for Plaintiffs
G-8455 S. Saginaw, Ste. 2
Grand Blanc, MI 48439
(810) 234-3633
PLUNKETT COONEY

ANDREW L. CAMPBELL (P-64391)
Attorney for Plaintiffs
164 W. Vienna Street, Suite #2
Clio, MI  48420
(810) 686-7440

H. William Reising (P-19343)
Attorneys for Defendants
111 E. Court Street, Ste. 1B
Flint, MI 48502
(810) 342-7001

---

## PLAINTIFFS' BRIEF IN SUPPORT OF THEIR RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

**Page**

I.    Questions presented ……………………………………………    iii

II.    Response to Defendants Statement of Material

Facts……………………………………………………………    iv

III.    Genuine Issues for Trial…………………………………    v

IV.    Exhibit Index…………………………………………………..    ix

V.    Index of Authorities……………………………………    xi

VI.    Brief………………………………………………………    1

## QUESTIONS PRESENTED

1.  Is Genesee County entitled to immunity granted by law?

    Plaintiffs Answer:     No
    Defendant's Answer:  Yes

2.  Are Defendants Captain Swanson and Sheriff Pickell entitled to qualified immunity

    Plaintiffs Answer:     No
    Defendant's Answer:  Yes

3.  Did Defendants violate the due process rights of Plaintiffs?

    Plaintiffs Answer:     Yes
    Defendant's Answer:  No

4.  Did Defendants violate Plaintiffs' Fifth Amendment rights?

    Plaintiffs Answer:     Yes
    Defendant's Answer:  No

5.  Did Defendants interfere with contractual relations of Plaintiffs?

    Plaintiffs Answer:     Yes
    Defendant's Answer:  No

PLAINTIFF'S RESPONSE TO DEFENDANTS STATEMENT OF MATERIAL FACTS NOT
IN DISPUTE

1.      Admit.

2.      Denied.  Both Defendants acts were ultra vires because they had not been delegated
        the duty to place two tow companies on the list with alternating tows by Vienna
        Township. (Exhibit 4, 14, and 15).  Vienna Township only delegated the duty to
        choose the towing company not towing companies. (Exhibit 4)  Further, Defendants
        did not act in good faith.  (Exhibit 25)

3.      Denied.  Plaintiff is a third-party beneficiary under the Service Agreement until
        signing of the Wrecker Dispatch Policy. (Exhibit 5).  After Captain Swanson created
        the policy and Plaintiff's signed it, Plaintiff had a contract with the Department.

4.      Denied.  Roadside Assistance was the exclusive tow provider in Vienna Township
        between 2001-2005.

5.      Admit.

6.      Admit in part, denied in part.  Plaintiffs admit that the Department issued a memo
        dated December 21, 2005 stating that tows would be alternated between Roadside
        Assistance and Leonard's.  Plaintiffs deny that tows were properly alternated between
        2005 – 2008.

7.      Denied.  Ted Wright was the owner and operator of Roadside Assistance.  Robert
        Petroff was an independent contractor for Roadside Assistance.

8.      Admit in part, denied in part.  Plaintiffs admit Defendant Captain Swanson testified
        that because of problems between Roadside Assistance and Leonard's Towing,
        created the Wrecker Dispatch Policy with requirements for all towing providers
        within the county.  Plaintiffs admit that once towing providers applied for and were
        placed on the no preference call list, tow companies would receive calls from the
        Department for the towing of impound vehicles.

9.      Admit.

10.     Denied.  Counsel for Plaintiff objected to Defendants question because it called for a
        legal conclusion, therefore, Plaintiffs answer is not admissible.  Subject to that
        objection, Defendant answered the question and admitted violating one requirement
        on the Wrecker Dispatch Policy.  Defendant did not admit to violating the
        requirements on the list.

11.     Denied.  Robert Petroff was terminated from the list pursuant to a letter written by
        Defendant Captain Swanson. (Exhibit 11).  In actuality, Defendants terminated Ted

Wright from the list because Robert Petroff was not a towing provider.  The termination letter states that Petroff was being terminated due to his suspicious behavior. (Exhibit 11)  The suspicious behavior was because an employee of a towing provider refused to submit to a custodial interview and a polygraph examination. (Exhibit 18, 19)  No other reasons were cited in the termination letter. (Exhibit 11)  Defendants waived any right to terminate Roadside for any other reason.

## ISSUES OF MATERIAL FACT THAT ARE GENUINE ISSUES FOR TRIAL

1. Is Defendant Genesee County immune under Federal Law for its acts in the instant case?

2. Are Defendants Sheriff Pickell and Captain Swanson as individuals immune to Plaintiffs claims under Federal Law for its acts in the instant case?

3. Are Defendants Sheriff Pickell and Captain Swanson in their official capacity immune to Plaintiff's claims under Federal Law for their acts in the instant case?

4. Is Defendant Genesee County immune under Michigan Law for its acts in the instant case?

5. Are Defendants Sheriff Pickell and Captain Swanson as individuals immune to Plaintiffs claims under Michigan Law for their acts in the instant case?

6. Did Robert Petroff assert his constitutionally protected rights when his attorney asserted that he would not allow his client to incriminate himself and refused to allow his client to be interviewed and polygraphed?

7. Did Genesee County retaliate against Robert Petroff for asserting his Fifth Amendment Rights when they terminated him from the no preference call list?

8. Did Captain Swanson or Sheriff Robert Pickell retaliate against Robert Pickell for asserting his Fifth Amendment Rights when they terminated him from the no preference call list?

9. Did Genesee County retaliate against Ted Wright for his relationship with Robert Petroff against the First Amendment Right to Intimate Association when they terminated him from the no preference call list?

10. Did Captain Swanson retaliate against Ted Wright for his relationship with Robert Petroff against the First Amendment Right to Intimate Association when they terminated him from the no preference call list?

11. Did Ted Wright have a property interest in maintaining his placement on no

v

preference call list under the Wrecker Dispatch Policy created by the County?

12.   Did Genesee County violate Ted Wright's constitutional right to property when it
removed Ted Wright from the no-preference call list?

13.   Did Genesee County violate Ted Wright's constitutional right to property when it
failed to provide him due process after removal from the no-preference call list?

14.   Did either Sheriff Robert Pickell or Captain Swanson violate Ted Wright's
constitutional right to property when it removed Ted Wright from the no-preference
call list?

15.   Did either Sheriff Robert Pickell or Captain Swanson violate Ted Wright's
constitutional right to property when it failed to provide him due process after
removal from the no-preference call list?

16.   Was Roadside a third-party beneficiary to the Enforcement Services Agreement
between the Genesee County and Vienna Township?

17.   Did Captain Swanson's actions in placing Leonard's on the no-preference call list in
December 2005 constitute a material breach of a third-party contract Roadside has
with the Genesee County Sheriff's Department and Vienna Township?

18.   Did Vienna Township transfer their full discretionary authority granted to them under
MCL 42.12 to the Sheriff's Department in their August 2005 memo?

19.   Did Captain Swanson violate MCL 600.1405 when he allowed Leonard's on the no
preference call list in December 2005?

20.   Did Captain Swanson have the power to allow Leonard's on the rotation in December
2005 when Leonard's had not received site plan approval for her leased building in
Vienna Township?

21.   Did Captain Swanson have the power to allow Leonard's on the no preference call list
in the summer of 2006 when Leonard's did not have a manned office in Vienna
Township?

22.   Would a reasonable officer in the same or similar circumstances know that he was
violating Ted Wright's constitutionally protected interests when he removed Ted
Wright from the no-preference call list?

23.   Would a reasonable officer in the same or similar circumstances know that he was
violating Robert Petroff's constitutionally protected interests when he removed Ted
Wright from the no-preference call list?

24.   Did Sgt. Wilhelm's comments to Captain Swanson prior to issuance of the

termination letter provide Captain Swanson fair notice that his acts were unjustified and in violation of either constitutional or statutory authority.

25.    Did Genesee County fail to properly train, supervise or discipline Captain Swanson by not providing training on the comprehension, interpretation and administration of contracts after Pickell had been sued in 2003 relating to a towing contract and removal of a tower from the rotation?

26.    Did Genesee County fail or properly train, or discipline Sheriff Pickell by not providing training on the comprehension, interpretation and administration of contracts after Pickell had been sued in 2003 relating to a towing contract and removal of a tower from the rotation??

27.    Did Captain Swanson's have the power to remove Ted Wright from the no-preference call list?

28.    Did Sheriff Robert Pickell have the power to remove Ted Wright from the no-preference call list?

29.    Did Genesee County have the power to remove Ted Wright from the no-preference call list?

30.    Did Genesee County act with malice in removing Ted Wright from the no-preference call list?

31.    Did Captain Swanson act with malice in removing Ted Wright from the no-preference call list?

32.    Did Sheriff Robert Pickell act with malice in removing Ted Wright from the no-preference call list?

33.    Did Captain Swanson's have the power to remove Robert Petroff from the no-preference call list?

34.    Did Sheriff Robert Pickell have the power to remove Robert Petroff from the no-preference call list?

35.    Did Genesee County have the power to remove Robert Petroff from the no-preference call list?

36.    Did Captain Swanson act with malice in removing Robert Petroff from the no-preference call list?

37.    Did Sheriff Robert Pickell act with malice in removing Robert Petroff from the no-preference call list?

38.    Did Captain Swanson intentionally interfere with Roadsides contract when it

terminated Roadside from the no-preference call list?

39.     Did either Sheriff Robert Pickell or Captain Swanson's conduct in his investigation demonstrate malice towards Roadside when he terminated Roadside from the no preference call list?

40.     Did either Sheriff Robert Pickell or Captain Swanson's motives demonstrate malice towards Roadside when he terminated Roadside from the no preference call list?

41.     Did Genesee County conduct a fair and complete investigation of Petroff's alleged motor vehicle theft?

Dated:  February 2, 2009                    /s/ _____

                                            Andrew L. Campbell (P64391)
                                            Attorney for Plaintiffs
                                            164 W. Vienna Street, Suite #2
                                            Clio, MI  48420
                                            (810) 686-7440
                                            Hundy24@yahoo.com

PLAINTIFFS EXHIBITS FOR PLAINTIFFS RESPONSE TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

| Exhibit Number | | Page |
|---|---|---|
| Exhibit 1 | Dep. Scott p. 65 | 1 |
| Exhibit 2 | First Dispatch Policy | 1 |
| Exhibit 3 | Wrecker Dispatch Policy | 1,2,14,15 |
| Exhibit 4 | Memorandum to Pickell | 1,6,12 |
| Exhibit 5 | MCL 600.1405 | 2,9 |
| Exhibit 6 | Vienna Township Minutes | 2 |
| Exhibit 7 | State Policy | 2 |
| Exhibit 8 | Leonard's Letter | 2,3 |
| Exhibit 9 | Delecki Letter | 3 |
| Exhibit 10 | Dep. Swanson, p.81 | 3 |
| Exhibit 11 | Termination Letter | 3 |
| Exhibit 12 | Dep. Pickell p.27 | 5 |
| Exhibit 13 | Dep. Pickell p.33 | 5 |
| Exhibit 14 | MCL 42.12 | 5,11 |
| Exhibit 15 | MCL 124.505 | 6 |
| Exhibit 16 | Dep. Gage, p.13 | 7 |
| Exhibit 17 | Dep. Petroff, p.96 | 8 |
| Exhibit 18 | Dep. Swanson p.102 | 8,18 |
| Exhibit 19 | Dep. Dwyer p.41 | 8,9,18 |
| Exhibit 20 | Dep. Wilhelm p.56 | 9 |
| Exhibit 21 | Dep. Swanson p.27 | 9 |

Exhibit 22    Dep. Swanson p.14                              9

Exhibit 23    Dep Wilhelm p.57                              11

Exhibit 24    Dep Wilhelm p.26                              12

Exhibit 25    Memo Wilhelm Conversation                    13

Exhibit 26    Letter from Adler                            13

Exhibit 27    Dep. Wilhelm, p. 33                          14

Exhibit 28    Dep. Gage, p. 9                              15

# INDEX OF AUTHORITIES

## FEDERAL CASES

*Adler v. Pataki*, 185 F.3d 35 (2nd Circuit) (1999)......................................................9

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, (1986))..............................................4

*Bill Call Ford, Inc. v. Ford Motor Co.,* 48 F.3d 201, 205 (6th Cir. 1995)..............................4

*Blake v. Wright*, 179 F.3d at 1007 (2000).............................................................7

*Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972)............................14

*Buttitta v. City of Chicago*, 9 F.3d 1198, 1202 (7th Cir. 1993).....................................15

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322, (1986)...................................................3,4

*City of Canton v. Harris*, 489 U.S. 378, 387-88 (1989)..............................................5,7

*City of St. Louis v. Prapotnik,* 485 U.S. 112 (1988)....................................................4

*County of Sacramento v. Lewis*, 523 U.S. 833 (1998)..................................................9

*Garrity v. New Jersey*, 385 U.S. 493 (U.S. 1967)....................................................19

*Gratsch v. Hamilton County Sheriff's Dep't*, 91 F. Supp. 2d 1160 (S.D. Ohio) (2000).........8,14

*Hope v. Pelzer*, 536 U.S. 730 (2002)...................................................................**8**

*Lefkowitz v. Turley*, 414 U.S. 70, 83-84 (1973)......................................................19

*Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 287 (1977).........17

*Owen v. City of Independence, Mo.,* 445 U.S. 622 (1980).............................................4

*Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986)................................................4,5

*Perry v. Sindermann*, 408 U.S. 593, 602 (1972)....................................................14

*Pierce v. Commonwealth Life Ins. Co.,* 40 F.3d 796, 800 (6th Cir. 1994)..........................3

*Sowards v. Loudon County*, 203 F.3d 426 433 (6th Circuit) (2000) ..................................9

*Teri Lynn Enterprise v. Pickell*, 203 Fed. Appx. 687 (6th Cir. 2006)..............................7

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc)................................17

*Tower v. Area Metropolitan Services Agency Council*, 1988 U.S. Dist. LEXIS 18067........17-19
(W.D. Mich. Sept. 25, 1988).

*Wilson v. Layne*, 526 U.S. 603 (1999)...........................................................................7,8

*US. V. Lanier*, 520 US 256, 269 (1997)............................................................................8

STATE CASES

*Lytle v Malady,* 458 Mich 153, 164, (1998)....................................................................15

*Odom v. Wayne County*, 2008 Mich. LEXIS 2573 (2008)..............................................10

*Rasch v East Jordan*, 141 Mich App 336 )1985)............................................................15

*Rood v General Dynamics Corp*, 444 Mich 107, 117 (1993)..........................................15

*Ross v. Consumer Power* , 420 Mich 567, 633 (1984)....................................................10

*Toussaint v. Blue Cross & Blue Shield,* 408 Mich at 579, 615 (1980). ...........................8,15

STATUTORY PROVISIONS

MCL
600.1405.............................................................................................................................2,9

MCL124.505.......................................................................................................................6,11

MCL 42.12...........................................................................................................................6,11

## COUNTER STATEMENT OF FACTS

Vienna Township ("the Township) had been contracting with the Genesee County Sheriff's Department ("the Department") for enforcement services since at least 1995. (Exhibit 1 – Dep. Scott p.65). The enforcement of services was governed by an Enforcement of Services Agreement ("the Agreement"). Since that date until December 21, 2005, one primary towing company was used to tow impound vehicles. The Department had at least two formal written policies detailing the procedure by which tow companies were dispatched to tow impound vehicles. The first was drafted in 2003 by Under sheriff Gage (Exhibit 2 – First Dispatch Policy) and the second was drafted by Captain Swanson in May 2006. (Exhibit 3 – Dispatch Policy). Dispatchers at the Department would contact a towing company that had been placed on the list maintained by the Department. The First Dispatch Policy separates the contract areas from the remainder of Genesee County. (Exhibit 2, at 2). Three contract areas (Vienna, Fenton, and Montrose) limit tows to one primary towing company. (Id.) From September 2001 until December 2005, Roadside was the primary tower in Vienna Township while Louie's was "secondary". (Id.) In August 2005, the Township gave the Department the "sole discretion and responsibility" as to their choice of "the towing company" to use. (Exhibit 4 – Memorandum to Pickell). The memo further limited discretion to a tow company that was "appropriately designated as a towing site" by the Township's building department. (Id.)

## THE DISPUTE

The Department began alternating calls between Leonard's and Roadside in late December 2005. Two towing companies were now supposedly used on a 50/50 basis. As the Memorandum to Pickell (Exhibit 4) specifically referred to "the towing company" this

1

constituted the Department's first violation of their "sole discretion and responsibility" and a breach of MCL 600.1405. (Exhibit 5). Additionally, Leonard's site plan was not approved by Vienna Township until January 23, 2006. (Exhibit 6 – Vienna Township Minutes). The Department's second violation of their "sole discretion and responsibility" was in allowing Leonard's to receive referrals before receiving authorization from Vienna Township's building Department. Consequently, the Department was not acting within the scope of its authority from December 21, 2005 until at least January 23, 3006. Additionally, a close inspection of the minutes of the site plan indicates that Leonard's would not be able to comply with the Dispatch Policy.

"There will be signs on the fence giving the Montrose phone number to call to get a car released, and someone will come to the lot. They won't have a building or a phone at the site." (Exhibit 3 at 6).

In May 2006 Swanson created the Dispatch Policy. (Exhibit 3). First, Defendants incorrectly assert in footnote 2 of page 3 of their Motion that the Dispatch Policy is very similar to the Michigan State Police Central Dispatch Policy. (Exhibit 7 – State Policy). The State Policy is a 13-page document that includes a termination provision and a formal complaint procedure. (Id. at 10, 12). Most notably the complaint procedure enumerates that "each wrecker service shall be held to identical standards of conduct or performance." (Id. at 12). Second, requirement nine of the Dispatch Policy mandates:

The wrecker service shall be physically located and staffed within the township as to which the service requests placement on the call list. (Exhibit 3 at 3).

In a letter to Defendant Pickell dated October 23, 2006, Sadie Leonard admitted she lacked a physical office without an employee physically present at all times. (Exhibit 8 -

2

Leonard's Letter, p.1).  Apparently, she confused having her site plan approved by the Township as establishing the necessary authority to be placed on the list.  Even though Leonard's didn't qualify to be on the list, Swanson still allowed her business to receive referrals.  This establishes the Departments third continuing contractual violation against Roadside.

In support of their assertion that Wright violated the Dispatch Policy, Defendants cite a letter submitted by Bob Delecki complaining about Roadside. (Exhibit 9 – Delecki Letter).  A close examination of the bottom of this letter, however, reveals that it was faxed to the Department from Leonard's.  (Id.)  Additionally, Defendant Swanson testified that he didn't seriously consider the letter for that very fact.  (Exhibit 10 - Dep. Swanson, p.81).

After Plaintiff refused to submit to a custodial interview, Defendants terminated him from the list.  (Exhibit 11 – Termination Letter).  Plaintiffs' drafted letters to Defendants informing them that Petroff was not a towing provider and allowing them an opportunity to cure.  Defendants failed to do so and Plaintiffs subsequently brought suit.

<u>STANDARD OF REVIEW</u>

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact.  The party moving for summary judgment bears the initial burden of specifying the basis on which summary judgment should be granted and of identifying portions of the record that demonstrate the absence of a genuine issue of material fact.  *Pierce v. Commonwealth Life Ins. Co.,* 40 F.3d 796, 800 (6th Cir. 1994) citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, (1986).  Once this initial burden is met, the non-moving party has the burden of presenting specific facts, supported by the record, showing a genuine issue of material fact.  *Bill Call Ford,*

3

*Inc. v. Ford Motor Co.,* 48 F.3d 201, 205 (6th Cir. 1995) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, (1986)).

ARGUMENT

## I.    DEFENDANTS ARE NOT IMMUNE TO FEDERAL CLAIMS

A.  Official Capacity / Federal Claims

Defendant's reliance on <u>Monell</u> is misplaced.  First, there is no qualified immunity available to a municipality or other employer or policymaking individual sued in his "official capacity" under 42 USCA 1983.  *Owen v. City of Independence, Mo.,* 445 U.S. 622 (1980). Second, <u>Monell</u> addresses immunity in the context of action by an agency or board, while, <u>Prapotnik</u> and <u>Pembaur</u>, on the other hand, addresses immunity in the context of a final decision maker.  *City of St. Louis v. Prapotnik,* 485 U.S. 112 (1988).  In <u>Pembaur</u>, the Court , in a plurality opinion, articulated four guiding principles:

> First, a majority of the Court agreed that municipalities may be held liable under § 1983 only for acts for which the municipality itself is actually responsible, "that is, acts which the municipality has officially sanctioned or ordered." 475 U. S., at 480. Second, only those municipal officials who have "final policymaking authority" may by their actions subject the government to § 1983 liability. Id., at 483. Third, whether a particular official has "final policymaking authority" is a question of state law. Ibid. Fourth, the challenged action must have been taken pursuant to a policy adopted by the official or officials responsible under state law for making policy in that area of the city's business. Id., at 482-483. *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986).

Actions against municipalities require satisfaction of certain special elements, including proof (1) that the municipality pursued an official custom or policy of failing to adequately train, supervise, or discipline its officers in a particular matter, and (2) that such official policy or custom was adopted by the official makers of policy with 'deliberate indifference' towards the

4

constitutional rights of persons affected by the policy or custom." *City of Canton v. Harris*, 489

U.S. 378, 387-88 (1989).  Paragraph 45 of Plaintiff's Complaint states,

> Defendant Genesee County's Sheriff Department, acting under color of
> state law, authorized, tolerated, ratified, permitted, or acquiesced in the
> creation of policies, practices, and customs, establishing a defacto policy
> of deliberate indifference to individuals such as Plaintiff Wright and
> Plaintiff Petroff.

Implicit within this portion of the averment is the assertion that the County failed to train,

supervise, or discipline its employees.  Therefore in determining whether Defendants Genesee

County is immune, the first issue is whether the municipality pursued an official custom or

policy, the second issue is whether Pickell was the final decision maker with authority to

terminate Plaintiffs, the third issue is whether the action was taken pursuant to a policy adopted

by Pickell, and the fourth issue is whether the policy or custom was adopted with deliberate

indifference.   Analyzing all issues, this Court should conclude that Defendants are not immune

from Plaintiffs claims and deny Defendants Motion.

## GENESEE COUNTY PURSUED AN OFFICIAL CUSTOM OR POLICY WHEN IT CHOSE TO TERMINATE PLAINTIFFS FROM THE LIST

In the present case, it is clear that Sheriff Pickell was the decision maker that had the

authority to establish final policy.  Pickell acknowledges that he made the decision over the

course of several meetings. (Exhibit 12– Dep. Pickell p.27).  Furthermore he asserted that it was

his decision to terminate Plaintiff Petroff from the list, agreeing that  "the buck stops with you--".

(Exhibit 13 – Dep. Pickell p.33). Consequently this establishes that his decision was a deliberate

choice to follow a course of action made from various alternatives.

Moreover, State law provides that townships have the authority to vest in its officers such

authority as may be necessary to protect the public.  (Exhibit 14 - MCL 42.12).   Further, state

law allows townships to contract with the Sheriff for services. (Exhibit 15 - MCLA 124.505). In the instant case, Vienna Township retained the authority to choose the towing company until August 2005. In a memo addressed to Sheriff Pickell, the Township transferred authority to Pickell to choose one towing company in the Township. (Exhibit 4). Consequently, for immunity purposes, under the test imposed for municipalities, Pickell had the authority to be the final decision maker under state law.

### THE POLICY WAS ADOPTED BY BOTH PICKELL AND SWANSON WITH DELIBERATE INDIFFERENCE TOWARDS THE CONSTITUTIONAL RIGHTS OF BOTH ROBERT PETROFF AND TED WRIGHT BY THE POLICY OR CUSTOM

A municipalities failing to adequately train, supervise, and/ or discipline its officers in a particular matter can establish deliberate indifference. Two types of situations justify a finding of deliberate indifference; failure to provide adequate training in light of foreseeable serious consequences and failure to act in response to repeated complaints of constitutional violations. *City of Canton v. Harris*, 489 U.S. 378, (1989).

In the present case, the County failed to provide adequate training in light of foreseeable serious consequences. In 2003, Teri Lynn Enterprise, a towing company in the Township, sued Defendant Pickell and the Township, among others. *Teri Lynn Enterprise Inc. v. Vienna*, et al. (E.D. Mich) (2007). While the constitutional issues were different, authority over discretion in eliminating the primary tow company was a relevant issue in the case. While suit was eventually dismissed against Pickell, *Teri Lynn Enterprise v. Pickell*, 203 Fed. Appx. 687 (6th Cir. 2006), the County was on notice in 2003 that the comprehension, interpretation and administration of contracts were important issues for the Sheriff and Swanson. Furthermore, in light of *Teri Lynn*, the August 2005 memo (Exhibit 4) should have sent off warning bells to the County over the

6

issue of discretion. Moreover, with the knowledge that towing companies were constantly complaining it is clear that the County should have taken action to train or supervise Pickell and Swanson. (Exhibit 16 – Dep. Gage, p.13). Even though the defense of Pickell must have cost the taxpayers money, there is no evidence that training was provided to either Sheriff Pickell or Captain Swanson on the comprehension, interpretation, and administration of contracts. Consequently, because the need for training and supervision was present and not provided, deliberate indifference has been established. Defendants, in their official capacity, are not immune and Summary Judgment should not be granted.

B.    Individual Capacity / Federal Claims

Under Wilson, a Court's initial task in evaluating a qualified immunity defense is to determine whether the plaintiff has alleged a deprivation of a constitutional right. *Wilson v. Layne*, 526 U.S. 603 (1999). A right is clearly established if there is binding precedent from the Supreme Court, the Sixth Circuit, the district court itself, or other circuits that is directly on point. *Blake v. Wright*, 179 F.3d at 1007 (2000). Further, the test is not whether the very action in question has previously been held unlawful, rather the test is whether in light of pre-existing law the unlawfulness must be apparent.'" *Wilson* at 615. Additionally, a clearly established right is one that a reasonable officer had fair notice that the conduct was unlawful. *Hope v. Pelzer*, 536 U.S. 730 (2002). Precedent, however, need not contain fundamentally similar facts, helpful though they may be. *US. V. Lanier*, 520 US 256, 269 (1997). In the present case, there are several deprivations of constitutional rights that must have been apparent to Defendants.

First, Plaintiff Wright had a protected property interest under the Fifth Amendment in receiving referrals from the County after he signed, dated, and initialed the Wrecker Dispatch

Policy created by Defendant Swanson. A "for cause" standard was enunciated in the policy but Roadside was terminated without cause and without review of the decision by the County. Defendants. (Exhibit 3). Defendants cannot claim that this due process right was not apparent. It was Defendants, after all, who chose to draft the Wrecker Dispatch Policy that more clearly created a protected property interest. A "for cause" standard is more thoroughly explained in *Toussaint v. Blue Cross & Blue Shield*, 408 Mich at 579, 615 (1980) while protected property interests are demonstrated in *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972) and *Perry v. Sindermann*, 408 U.S. 593, 602 (1972).

Second, Plaintiffs have a First Amendment Right to Intimate Association. Plaintiff Wright treated Plaintiff Petroff like an adopted son. (Exhibit 17 - Dep. Petroff, p.96). Both had cohabitated and Petroff further testified he considers Wright a "father figure" and calls him, "Dad". (Id.) The right was interfered with when Defendants terminated Plaintiff Petroff from the list but in reality terminated Plaintiff Wright. The termination letter is a thinly veiled attempt to divide both parties and extract pressure pursued in hopes of eventually forcing Plaintiff Petroff to submit to custodial interrogation and a polygraph. Somewhat similar issues were presented in both *Sowards v. Loudon County*, 203 F.3d 426 433 (6th Circuit) (2000) and *Adler v. Pataki*, 185 F.3d 35 (2nd Circuit) (1999).

Third, Plaintiff asserted his right against self-incrimination under the Fifth and Fourteenth Amendments and was retaliated against for that assertion. By and through his Attorney, Terry Adler, Plaintiff Petroff asserted his right. He was then terminated from the list for "suspicious behavior". (Exhibit 11). Both Swanson and Dwyer testified that the suspicious behavior was his failure to submit to custodial interrogation. (Exhibit 18 - Dep. Swanson p.102 and Exhibit 19 -

8

Dep Dwyer p.41).  Similar issues were presented in *Tower v. Area Metro. Serv's Agency Council*, 1988 U.S. Dist. LEXIS 18067 (1988) and *Garrity v. New Jersey*, 385 U.S. 493 (U.S. 1967).

Fourth, Plaintiffs have substantive due process rights under the Fifth and Fourteenth Amendment pursuant to <u>Lewis</u>. *County of Sacramento v. Lewis*, 523 U.S. 833 (1998).  <u>Lewis</u>, established that the touchstone of due process is protection of the individual against arbitrary action of government.  (Id at 839).  Arbitrary action is defined as egregious official conduct that shocks the conscience of the Court.  Abuses of power may be viewed as conscience shocking will depend upon the environment and circumstances.  Surely, Swanson's act in terminating an innocent third-parties business, thus livelihood, for the lawful actions of another party that he had no direct contractual relationship with should shock the conscience of this Court.  It is interesting to note that Sgt. Wilhelm's conversation with Swanson sometime shortly before termination seemed to indicate that Wilhelm did not agree with what Swanson was going to do.  (Exhibit 20 – Dep. Wilhelm p.56).  Wilhelm, therefore, may have provided fair notice with his objectively reasonable opinion.

Furthermore, Swanson's decision to place Leonard's on the list in December 2005 was another act of deliberate indifference towards Ted Wright's constitutional and statutory rights. First and foremost, Roadside was a third-party beneficiary to the contract between the Department and the Township.  Swanson decision to pursue the policy of allowing alternating tows, his first time doing so and in a position he occupied for just over one year, was a material breach of that contract and violated MCL 600.1405. (Exhibit 21 – Dep. Swanson p.27 and Exhibit 22 – Dep. Swanson p.14).  Captain Swanson should have known that his actions were

9

violating both Robert Petroff and Ted Wright's constitutional rights because Captain Swanson was the individual that was responsible for creating Wrights due process rights. Swanson drafted the policy that was signed, dated and initialed by each party that desired to be on the list. Swanson's own actions transformed Roadside from a third-party beneficiary to a direct contract with the Department– creating a property interest protected under the Fifth and Fourteenth Amendments.

## II.    DEFENDANTS ARE NOT IMMUNE FROM STATE LAW CLAIMS

Odom addressed whether a governmental employee was immune from liability for an intentional tort. *Odom v. Wayne County*, 2008 Mich. LEXIS 2573 (2008). citing *Ross v. Consumers Power Co*, 420 Mich 567, 633 (1984). Defendants have the burden of establishing each and every element of the Ross test to be granted immunity. (Id. at 19). Defendants cannot establish immunity because Defendants acts were ultra vires in nature and were not made in good faith.

A.    DEFENDANTS ACTS WERE ULTRA VIRES

A factor in determining immunity as a defense is whether the Defendants acts were taken "during the course of employment with the employee acting or reasonably believed he was acting, within the scope of his authority." (Id at 13). No immunity is granted for committing ultra vires acts.

In the instant case, Defendants actions are ultra vires in nature for two reasons; first, Captain Swanson did not have the power to remove Robert Petroff from the list based on fact and second, Defendants lacked the power to remove Ted Wright from the list as a matter of law.

10

           i.       PETROFF WAS NOT A TOWING PROVIDER

Wilhelm had informed Swanson sometime previous to the termination letter that Petroff owned Roadside. (Exhibit 23 - Dep Wilhelm p.57). Petroff never had an ownership interest in Roadside and therefore was not a towing provider. Consequently, Swanson had no authority to terminate him. Although Defendants allege that Petroff acknowledged that the Wrecker Dispatch Policy applied to him, there is nothing within the Policy that prohibits suspicious behavior. Additionally, nothing within the Policy indicates any restrictions on towing companies or their employees for off-duty activities. As Swanson drafted the contract, any ambiguity must be construed against Defendants. Consequently, Swanson did not have the power to remove Petroff from the list and his actions are outside the scope of his authority.

           ii.     VIENNA TOWNSHIP GRANTED THE DEPARTMENT TO CHOOSE ONE TOWING PROVIDER CONSISTENT WITH PAST PRACTICE

MCL 42.12, establishes the authority that a Township has in prescribing powers and duties of a policemen:

> The township board shall make all necessary rules for the government of the township police force and its members and shall prescribe the powers and duties of policemen and watchmen, and may invest them with such authority as may be necessary for the preservation of quiet and order and the protection of person and property within that part of the township....[Emphasis supplied.]

Additionally, under MCLA 124.505, Townships have the authority to hire the Sheriff's department for enforcement of services through an interlocal agreement. Subject to the above statutes, the Township contracted with the County and the Department for enforcement of services. The parties had been using one tow company for the vast majority of tows since 1995.

(Exhibit 1).  In the summer of 2001 a problem developed and the Township and the Department

looked for another company to use.  *Teri Lynn Enterprise v. Pickell*, 203 Fed. Appx. 687 (6th

Cir. 2006).  After comparing pricing, other factors, Roadside was chosen as the primary tower.

(Exhibit 24 – Dep Wilhelm p.26)  Roadside began towing in the month of September 2001 just

prior to the new two-year contract, October 1, 2001 – September 30, 2003 was signed.  Until

December 2005, Roadside was the primary tow company for the Department.

  In August 2005, however, the Township issued a memo ("the memo") to Robert Pickell

indicating:

Please be advised that the Sheriff's Department <u>has sole discretion and responsibility</u> to which
they choose to have as <u>the</u> towing <u>company</u> out here in Vienna Township.  Vienna Township has
no preference per our contract with the Sheriff's Department as to whom the department chooses
as <u>the</u> towing <u>company</u>.

If <u>the</u> towing <u>company</u> that the Sheriff's Department chooses to do the towing is in Vienna
Township, the <u>department must first contact our building department to ensure that the property
is appropriately designated as a towing site</u>. (emphasis added).  (Exhibit 4).

  The memo constitutes a delegation of authority granted by the Township to the

Department limiting the Department's discretion to choose one towing company.  The use of the

word 'the' and the use of the singular 'company' on three occasions indicates that the Township

was delegating limited authority to the Department to choose one towing company.  One tow per

township was in fact the practice for every other "contract area" as stated in the first policy.

(Exhibit 2).  The past practice and a course of performance over a ten-year history combined

with the precise wording of the above memo indicates that it was the intent of the Township to

grant the Sheriff the authority to choose one and only one towing company for the vast majority

of tows.  Once Swanson placed Leonard's on the rotation on an alternating basis with Roadside,

Swanson violated the terms of the Agreement and his acts constitute a material breach of

12

contract. It was only after this act that Defendants assert Roadside committed any wrongdoing. Defendants own actions created the conditions of any alleged misconduct by Roadside. As this act was unlawful and outside the scope of employment, Defendants cannot be immune and Defendants Motion should be denied.

## B. DEFENDANTS ACTS WERE CONDUCTED WITH MALICE

Pickell's decision to terminate Petroff from the no preference call list was the direct result of Captain Swanson's absolute gross negligence in determining that Robert Petroff was a towing provider. Swanson relied on an undated memo (Exhibit 25 – Memo Wilhelm Conversation). Swanson made no effort to verify that Petroff was the owner of Roadside. Wright, however, was the owner and operator of Roadside on the day he received the termination letter. Furthermore, even assuming that Swanson simply made a mistake, Defendants failed to correct the problem. Even after receiving notice of the issue within two weeks from Attorney Terry Adler, Defendants failed to take corrective action. (Exhibit 26 – Letter from Adler). Consequently, because Plaintiffs had the opportunity to remedy the situation and failed to do so, their actions can only be interpreted as intentional and malicious.

## III.    DEFENDANTS VIOLATED PLAINTIFFS' DUE PROCESS RIGHT

As more thoroughly demonstrated and analyzed in Plaintiffs Motion for Summary Judgment, to prevail on a § 1983 due process claim, a Plaintiff must show that government action deprived him of a legally cognizable interest in life, liberty, or property and that the defendants deprived him of that interest without affording due process.

## A. PLAINTIFFS HAD A PROPERTY INTEREST IN RECEIVING IMPOUND CALLS

13

A property interest exists and its boundaries are defined by "rules or understandings that stem from an independent source *such as* state law--rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). A property interest can be created by a state statute, a formal contract, or a contract implied from the circumstances. *Perry v. Sindermann*, 408 U.S. 593, 602 (1972). To show a denial of due process in the job termination context, a plaintiff must prove that he had a property interest in continued employment, and that the constitutional minimum of due process was not provided before termination. *Gratsch v. Hamilton County Sheriff's Dep't*, 91 F. Supp. 2d 1160 (S.D. Ohio) (2000).

  **i.**  ROADSIDE HAD A CONTRACT

Roadside was an intended third-party beneficiary to the contract between the County, the Department, and the Township from September 2001 through 2006. After over four years of providing "very good" service with "very, very few complaints", the terms of the contract were modified by creation of the Dispatch Policy. (Exhibit 27 - Dep. Wilhelm, p 33).

In May 2006, Defendant Swanson created the Dispatch Policy. Applied to the entire County, the Dispatch Policy outlined eighteen requirements for placement on the list and mandated completion and acceptance of an application as well as physical inspections. (Exhibit 3). Each applicant signed, dated and initialed the policy. It also included a "for cause" standard for termination from the list,

> In consideration for placement on the Sheriff's Office no preference wrecker service call list, the undersigned wrecker service understands and agrees to adhere to the above **requirements** and **conditions**. Failure to comply with all of these requirements or misrepresented or falsified information **shall be cause for removal** from the wrecker call list.

14

In return for each applicant's promises and in return for completion of an application to the Sheriff's satisfaction, the Department agreed to provide referrals to Roadside. Roadside signed the Dispatch Policy and was placed on the list.

## B.  ROADSIDE HAD A PROPERTY INTEREST IN CONTINUED EMPLOYMENT

A property interest in a job exists when a government employer's discretion is clearly limited so that the employee cannot be denied employment unless specific conditions are met. *Butitta v. City of Chicago*, 9 F.3d 1198, 1202 (7th Cir. 1993). The Michigan Supreme Court has recognized three ways a plaintiff can prove such contractual terms: (1) proof of "a contractual provision for a definite term of employment <u>or</u> a provision forbidding discharge absent just cause;" (2) an express agreement, either written or oral, regarding job security that is clear and unequivocal; or (3) a contractual provision, implied at law, where an employer's policies and procedures instill a "legitimate expectation" of job security in the employee. *Lytle v Malady,* 458 Mich 153, 164 (1998) (citing *Rood v General Dynamics Corp*, 444 Mich 107, 117 (1993), and *Toussaint v. Blue Cross & Blue Shield,* 408 Mich at 579, 615 (1980). The burden shifts to the defendant to prove that the discharge was for just cause. *Rasch v East Jordan*, 141 Mich App 336 (1985).

The Dispatch Policy, as demonstrated above contains a just cause provision. Additionally, while there are no specific references to time in the Policy, the Agreement was for a two –year term and should be imputed to Plaintiff Wrights contract. (Exhibit 28 – Dep. Gage, p. 9). Consequently, Plaintiffs can establish a property interest in continued employment.

Defendants cannot demonstrate a policy-based reason for discharge. Defendants assert reasons for termination based upon alleged wrongdoings by Plaintiffs previous to issuance of the

15

termination letter. The termination letter, however, reflects the state of mind of Defendants at the time. Had Defendants wished to rely on these alleged wrongdoings as a basis for termination Defendants should have cited these reasons within the letter. Instead, Defendants chose to voluntarily waive known contractual rights to terminate Plaintiff by not attempting to enforce those requirements in a timely manner. Defendants slept on their rights and should not be rewarded for doing so. Furthermore, Defendants created any wrongdoing that did occur when they acted outside the scope of their delegated authority by adding Leonard's to the list and in failing to hold Leonard's to the same standards it held Roadside. It is not coincidental that all of the alleged wrongdoings by Roadside occurred after the 2005 memo that added Leonard's to the list. Wrights actions, consequently, should be construed as an attempt to mitigate his damages.. Because Defendants cannot demonstrate a legal excuse for termination Summary Judgment should not be granted.

## IV.    RETALIATION FOR ASSERTION OF FIFTH AMENDMENT RIGHTS

Although improperly titled, Plaintiff's Complaint averred a retaliation claim. (Plaintiffs Complaint ¶ 42). In fact, it is the retaliatory nature of Defendants acts is the entire basis for this lawsuit. Retaliation is established by demonstrating Plaintiffs (i) were engaged in constitutionally protected conduct; (ii) that defendants' adverse action caused them to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that conduct; and (iii) that the adverse action was motivated at least in part as a response to the exercise of their constitutional rights. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (1999) (en banc).

16

The Supreme Court outlined the procedure to be followed with respect to an employee's claim under section 1983 that she was discharged for engaging in constitutionally protected conduct. (*Mt. Healthy* at 287.).   First, the employee must establish that her conduct was constitutionally protected, and that it was a substantial or motivating factor in the decision to discharge her.  The burden of proof then shifts to the employer to demonstrate that it would have discharged the employee even in the absence of the protected conduct. (Id at 289).  In <u>Tower</u>, the Sixth Circuit applied the Mt. Healthy analysis to a situation involving alleged retaliation for assertion of Fifth and Sixth Amendment rights.  (*Tower* at 133).

## A.  PETROFF WAS ENGAGED IN CONSTITUTIONALLY PROTECTED CONDUCT

The Plaintiff in <u>Tower</u>, a public employee, was terminated in a letter by her employer. (Id. at 132).  Previous to her termination, Tower asserted her Fifth Amendment Rights and refused to speak to a police officer investigating a crime at her place of employment.  (Id.) The Sixth Circuit determined that Tower's constitutionally protected conduct was her refusal to speak with Officer Baker during a criminal investigation. (Id. at 134).

Likewise, in the instant case, Petroff asserted his Fifth Amendment rights and refused to be interviewed by Sgt. Dwyer at the downtown Genesee County headquarters.  The interview would have been custodial in nature.  Consequently, Petroff was also engaged in constitutionally protected conduct.

### i.  PETROFF'S ASSERTION WAS A SUBSTANTIAL OR MOTIVATING FACTOR IN THE DECISION TERMINATE TED WRIGHT

The termination letter indicates only one reason for termination, Petroff's suspicious behavior. (Exhibit 11).  Furthermore, it is clear from Captain Swanson and Sgt. Dwyer's

17

testimony that the basis for their belief that Petroff's behavior was suspicious was the fact that Petroff would not submit to a custodial interview or a polygraph. (Exhibit 18 - Dep. Swanson p.102 and Exhibit 19 - Dep Dwyer p.41). Therefore, Petroff's assertion of his Fifth Amendment rights was the substantial or motivating factor in the decision to discharge Ted Wright from the no preference call list.

ii.    DEFENDANTS WOULD NOT HAVE DISCHARGED WRIGHT EVEN IN THE ABSENCE OF PETROFF'S PROTECTED CONDUCT

Tower is instructive in analyzing whether an employer could demonstrate that it would have discharged an employee even in the absence of the employees protected conduct.

Like Plaintiffs, Tower was informed she was fired via a letter from her employer. Unlike Plaintiffs, however, in Tower the public employer stated multiple reasons for termination in its letter. (*Tower* at 132). One of the termination reasons mentioned in the letter, was the employee's refusal to be interviewed by a police officer. (Id.) The Court held that a retaliation claim was not established because the other reasons cited by the employer demonstrated that the employer would have discharged Tower even in the absence of her protected conduct. (Id. at 135). In the instant case, however, the County explicitly indicated only one reason for its decision, Petroff's "suspicious behavior".

Defendants seek to shield themselves from culpability by maintaining that Roadside had previously violated the Wrecker Dispatch Policy previous to the date of the termination letter. Absent the fact that no other reasons were cited within the termination letter, Defendants have no basis for a defense. Even if the County had, as the employer did in Tower, asserted other non-retaliatory, compelling, policy-based reasons for Roadsides termination from the list in the termination letter, this would still not present a cognizable legal defense for a two reasons. First,

18

Petroff was an innocent, private citizen who had no contractual relationship with Defendants. Second, Defendants have unclean hands because their acts in allowing Leonard's to receive alternating tows was the proximate cause of any Dispatch Policy violations. Consequently, Defendants cannot demonstrate that it would have discharged Wright even in the absence of Petroff's conduct.

## RETALIATION BY THE GOVERNMENT AGAINST INDEPENDENT CONTRACTORS FOR REFUSAL TO WAIVE THEIR FIFTH AMENDMENT RIGHTS IS UNCONSTITUTIONAL

The Court has repeatedly condemned government retaliation against employees or independent contractors who refused to waive their Fifth Amendment rights. *Garrity* at 493. See also *Lefkowitz v. Turley*, 414 U.S. 70, 83-84 (1973). Garrity involved an investigation into a police ticket-fixing scheme. Finding that the police officers statements were made under duress because Defendants had to choose between self-incrimination or job forfeiture, the Supreme Court ruled that the State could not threaten to discharge defendants to secure incriminating evidence against them. (Id. at 497).

The present case is no different. The termination letter sends a thinly veiled message: Petroff must submit to an interview or Roadside will remain off of the list. The fact that neither Petroff nor Roadside had criminal proceedings instituted against them is irrelevant. The threat was clear to both parties because they faced the same choice as the officers in Garrity - lose their means of livelihood or pay the penalty of self-incrimination. Consequently, Plaintiffs claim should not be dismissed and Summary Judgment should not be granted.

19

## V. DEFENDANTS INTERFERED WITH PLAINTIFFS CONTRACT

As more thoroughly argued in Plaintiffs' Motion for Summary Judgment, Defendants intentionally interfered with Plaintiffs contract. In addition to the malicious acts described in Argument II (B), hereby incorporated by reference, one of the most important facts to consider is that no charges were ever brought against Petroff. If Defendants truly deemed Petroff to have committed the crime of filing a false police report, they would have instituted proceedings to bring charges. Their failure to do so and instead punish a third-party is further evidence of the malice present. Because Plaintiffs can establish that Defendants intentionally interfered with Plaintiffs contract, Summary Judgment should not be granted.

## CONCLUSION

For the reasons set forth, Defendants' Motion should be denied.

Dated: February 2, 2009

/s/ _____

Andrew L. Campbell (P64391)
Attorney for Plaintiffs
164 W. Vienna Street, Suite #2
Clio, MI 48420
(810) 686-7440
Hundy24@yahoo.com

20

*CERTIFICATE OF SERVICE*

      I hereby certify that on February 2, 2009, I served Plaintiffs' response to Defendants' motion for summary judgment and brief in support on the following persons by ECF: Andrew Campbell and H. William Riesing

Dated:  February 2, 2009                /s/F. ROBERT SCHMELZER
                                      Attorney for Plaintiffs