UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TED WRIGHT d/b/a ROADSIDE
ASSISTANCE and ROBERT PETROFF,

    Plaintiffs,                                 Case No. 08-11066

v.                                                     HONORABLE SEAN F. COX
                                                      United States District Court

GENESEE COUNTY CORPORATION,
a governmental entity, CAPTAIN
CHRISTOPHER SWANSON, individually
and in his official capacity, and SHERIFF
ROBERT J. PICKELL, individually and
in his official capacity,

    Defendants.
_____/

OPINION & ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY
JUDGMENT AND DENYING PLAINTIFFS' MOTIONS FOR SUMMARY JUDGMENT

Plaintiffs filed this § 1983 action on March 12, 2008, alleging that various Genesee County, Michigan public officials wrongfully infringed with their status as a preferred vendor to the County for towing services. The matter is before the Court on the parties' cross-motions for summary judgment and for partial summary judgment [Doc. Nos. 20, 21, 46, & 47]. The parties have fully briefed the issues, and the Court declines to hear oral argument pursuant to Local Rule 7.1(e)(2). For the reasons below, the Court **GRANTS** the Defendants' motions for summary judgment [Doc. Nos. 20 & 46], **DENIES** the Plaintiffs' motions for partial summary judgment [Doc. Nos. 21 & 47], and **DISMISSES** this case in its entirety.

BACKGROUND

The Plaintiffs, Ted Wright ("Wright") and Robert Petroff ("Petroff"), worked for a

1

towing company known as Roadside Assistance, one of numerous towing companies within Genesee County.

The Genesee County Sheriff's Department ("the Department") provides enforcement services for many townships within Genesee County, including Vienna Township, Michigan. [*See* Swanson Dep., Def.'s Ex. 1, Doc. No. 20, p.19].  As a necessary part of conducting business, the Department at times required towing services for vehicles.  Prior to September 30, 2001, the agreement for towing services between Vienna Township and the Department required that the Department utilize companies principally located within Vienna Township. [*See* Def.'s Ex. 2, Doc. No. 20, p.8, ¶ 15].  However, subsequent agreements between Vienna Township and the Department gave the Department sole discretion as to who could be used as a towing provider.

The Department had an established protocol for contacting towing companies to provide towing services. [Swanson Dep., Def.'s Ex. 1, Doc. No. 20, p.24].  First, a dispatcher from the Department would contact a particular towing company if there was a request from the scene.  Otherwise, a towing company was contacted based upon criteria put out by the Department to be placed on their list of approved towing service providers ("the No-Preference List"). [May 9, 2003 Memorandum Regarding Towing Companies, Def.'s Ex. 3, Doc. No. 20].

From 2001 until 2005, Roadside Assistance was the primary towing company in Vienna Township on the Department's No-Preference List.  In late 2005, however, another company - Leonard's Towing - requested to be placed in the rotation for Vienna Township towing jobs. [Swanson Dep., Def.'s Ex. 1, Doc. No. 20, p.27].  Leonard's Towing had all the necessary criteria for placement on the No-Preference List, and on December 21, 2005 the Department

added them to the No-Preference List to alternate tows with the Plaintiffs' company. [*See* December 21, 2005 Memo, Def.'s Ex. 4, Doc. No. 20].

The Department's placement of Leonard's Towing on the No-Preference List for Vienna Township began an ongoing feud between Leonard's Towing and the Plaintiffs. In May of 2006, because of that feud, Captain Swanson ("Swanson") drafted an express policy concerning wrecker service within Genesee County. [*See* Wrecker Dispatch Policy, Def.'s Ex. 5, Doc. No. 20]. All wrecker service providers in Genesee County had to abide by the new policy, or risk being removed from the No-Preference List:

> In consideration for placement on the Sheriff's Office no preference wrecker service call list, the undersigned wrecker understands and agrees to adhere to the above requirements and conditions. *Failure to comply with all of these requirements or misrepresented or falsified information shall be cause for removal from the wrecker call list.*

*Id*. (emphasis added).

Plaintiff Wright admits that he violated that policy by "jumping a tow" - i.e., showing up at a crime scene or accident when he wasn't called to respond:

> Q: Okay. The incident that we are speaking about where you showed up to a crime scene or accident scene where you were not dispatched, that took place after you signed this policy, right? True?
>
> A: True.
>
> *****
>
> Q: Alright. And you signed an agreement saying you were going to comply with all these things on here, true?
>
> A: True.
>
> Q: Okay. And you would agree with me showing up to an accident scene where you are not called would be a violation of the towing policy, right?

>Mr. Campbell: Objection, cause for a legal conclusion. Answer the question.
>
>A: Yes.

[Wright Dep., Def.'s Ex. 6, Doc. No. 20, pp.75-76]. Petroff likewise admitted that he was aware of the policy and that he was required to comply with it. [Petroff Dep., Def.'s Ex. 7, Doc. No. 20, p.39].

Problems with Roadside Assistance continued, and Wright again jumped a tow in February of 2007. This caused Captain Swanson to send out a "last chance notification" indicating that Roadside Assistance would be permanently removed from the No-Preference List if it did not comply with the Department's wrecker service policy. [Swanson Letter, Def.'s Ex. 8, Doc. No. 20].

Roadside Assistance was eventually removed from the No-Preference List after Petroff refused to cooperate with an investigation of a vehicle belonging to Petroff that was reported stolen. Captain Swanson never considered Petroff a suspect in the crime, nor were charges brought against Petroff. [Swanson Dep., Def.'s Ex. 1, Doc. No. 20, pp. 99-102]. After Petroff refused to appear for an interview, Captain Swanson sent Petroff a letter indicating Roadside Assistance was being removed from the County's No-Preference List. Swanson explained the decision as follows:

>. . . because of his relationship as a tow provider [and his] not cooperating with the agency that is in agreement with him to provide service, with all the history, was the determining factor to show he [was] no longer appropriate for us to put in contact with the people we serve.

[Swanson Dep., Def.'s Ex. 1, Doc. No. 20, pp.103-04]. In response, the Plaintiffs filed the instant action on March 12, 2008.

4

STANDARD OF REVIEW

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgement as a matter of law." FED. R. CIV. P. 56(c). The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Celotex v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting FED. R. CIV. P. 56(e)).

ANALYSIS

The Plaintiffs had no contract with the Defendants to be the exclusive provider of towing services for Vienna Township, and likewise had no property interest in their continued status on the No-Preference List. None of the Defendants' actions violated the Plaintiffs' constitutional rights of free association, procedural due process, or substantive due process. Plaintiff Petroff's individual Fifth Amendment right against self-incrimination was likewise not infringed upon by the Defendants. No evidence exists of a policy or custom by the County to support a *Monell* claim by the Plaintiffs. Further, as the Defendants were engaged in a governmental function, they are immune from all of Plaintiff's state-law tort claims. Finally, Defendants did not violate Plaintiffs' rights under the Michigan Constitution. As such, the Court **GRANT**S the Defendants' motions for summary judgment [Doc. Nos. 20 & 46].

I. <u>Plaintiffs' Claims for Breach of Contract Are Without Merit</u>.

Plaintiffs' claims in this action center around their allegation that the Defendants breached a contract between the parties. No such contract existed between the parties, however. As such, the Defendants are entitled to summary judgment on Plaintiffs' breach of contract claims [Counts 8 and 9].

Under Michigan law, "[b]efore a contract can be completed, there must be an offer and acceptance." *Eerdmans v. Maki*, 226 Mich. App. 360, 364-65 (1997). "An offer is defined as the manifestation of willingness to enter into a bargain so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." *Id*. "[A]n acceptance sufficient to create a contract arises where the individual to whom an offer is extended manifests intent to be bound by the offer, and all legal consequences flowing from the offer, though voluntarily undertaking some unequivocal act sufficient for th[a]t purpose." *Kraus v. Garrish Twp.*, 205 Mich. App. 25, 45 (1994).

Plaintiffs argue that their right to continue on the No-Preference List was contractually protected in two ways: 1) by entering into a contract with the Genesee County Sheriff's Department on or about September 30, 2001 "as the sole exclusive towing provider of impounded vehicles in Vienna Township." [Pl.'s Amended Complaint, Doc. No. 36, ¶160]; and 2) under the terms of Captain Swanson's May 19, 2006 "Wrecker Dispatch Policy 2006" [Pl.'s Br., Doc. No. 29, Ex. 2]. Both of these arguments fail on their merits.

Plaintiffs' first alleged contractual right, stemming from their "contract" in 2001, is without merit. First, Plaintiffs provide absolutely no evidence regarding the supposed terms of that "contract," or even that the dealings between the parties in 2001 sufficiently evidence a

6

contract under Michigan law. Under *Anderson v. Liberty Lobby*, Plaintiffs have the burden to evidence a genuine issue of material fact with regard to the 2001 "contract," and they have failed to meet that burden here. Second, and more importantly, Plaintiffs themselves admit that "*the terms of the [2001] contract were modified by creation of the [2006] Dispatch Policy.*" [Pl.'s Br., Doc. No. 29, p.14, citing Wilhelm Dep., Pl.'s Ex. 27, Doc. No. 29 p.33 (emphasis added)]. Plaintiffs themselves admit that the 2001 contract, if such a contract did even exist, was superseded by the 2006 "contract." As such, summary judgment on Plaintiff's cause of action for breach of the 2001 "contract" [Count VIII] is **GRANTED**.

Furthermore, Plaintiffs have proffered insufficient evidence that the 2006 Memo establishes a contract between the parties limiting the Defendants' ability to remove Plaintiffs from the No-Preference List without just cause. In support of their argument, Plaintiffs rely solely upon the following language from the 2006 Memo:

> In consideration for placement on the Sheriff's Office no preference wrecker call list, the undersigned wrecker service understands and agrees to adhere to the above requirements and conditions. *Failure to comply with all of these requirements or misrepresented or falsified information shall be cause for removal from the wrecker call list*.

[Pl.'s Ex. 3, Doc. No. 29 (emphasis added)].

The parties' briefs vigorously debate whether Plaintiffs' acceptance of the terms of the 2006 Memo constitutes a "contract." This debate, however, is purely academic. Assuming *arguendo* that Plaintiffs are correct that the 2006 Memo is a contract between the parties, that document's own terms do not establish a right for Plaintiffs to only be terminated "for cause." Rather, the express terms of the 2006 Memo, as outlined *supra*, demonstrates that violation of the 2006 Memo's terms "shall be cause for removal from the wrecker call list," *Id*., not that

violation of those terms *constitutes the only ways in which Plaintiffs could be removed from the list*. Rather, the uncontested deposition testimony of Captain Swanson shows that it was always within the discretion of the Genesee County Sheriff's Department who would be on the No-Preference List. [*See* Swanson Dep., Def.'s Ex. 1, Doc. No. 20, p.37]. For these reasons, the Court **GRANTS** summary judgment against Plaintiffs with respect to their cause of action for breach of the 2006 contract [Count IX].

II. <u>Defendants Did Not Violate Plaintiffs' Fourteenth Amendment Rights to Procedural Due Process</u>.

Several of Plaintiffs' claims center around what they argue was their continuing property interest in remaining on the No-Preference List. Under an analogous case decided by the Sixth Circuit, however, Plaintiffs have no such protected property interest.

In *Lucas v. Monroe County*, 203 F.3d 964 (6th Cir. 2000), the Sixth Circuit considered a similar claim in which a wrecker service operator brought suit alleging that remaining on a list used by the sheriff's department in referring towing service calls was a protected property interest giving rise to due process protection. The court stated as follows:

> The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interest that a person has already acquired in specific benefits. *The mere unilateral expectation of continuing to receive a benefit is not enough to create a protected property interest; instead a legitimate claim of entitlement must exist*. A property interest exists and its boundaries are defined by rules and understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

*Lucas*, 203 F.3d at 978 (internal citations and quotations omitted) (emphasis added). In *Lucas*, the Sixth Circuit noted that "[p]laintiffs can point to no ordinance, contract, or other 'rules of mutually explicit understandings' that support their claim of entitlement to remain on the stand-

by list." *Id*., citing *Perry v. Sindermann*, 408 U.S. 593, 601 (1972).

The same is true in the instant case. Here, even assuming *arguendo* that a contract between the parties existed, that contract, as explained *supra*, did not entitle the Plaintiffs to remain on the No-Preference List. As such, Plaintiffs do not have a property interest sufficient to claim a violation of their right to procedural due process under the Fourteenth Amendment. Therefore, the Court **GRANTS** summary judgment against Plaintiffs on their procedural due process claim [Count II].

### III.  Defendants Did Not Violate Plaintiffs' Fourteenth Amendment Rights to Substantive Due Process.

Plaintiffs allege a violation of their Fourteenth Amendment rights to substantive due process [Count XII] based upon alleged deprivations of their rights to liberty and property. These interests, however, are not sufficient to sustain a substantive due process violation in this case.

Plaintiffs cannot assert a substantive due process violation based upon their right to intimate association. "Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing those claims." *Albright v. Oliver*, 510 U.S. 226, 273 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989) (internal citations and quotations omitted)). Here, Plaintiffs' right to intimate association, if a violation of such exists at all, is already well-protected under other provisions. *See, e.g., Beecham v. Henderson County*, 422 F.3d 372, 375 (6th Cir. 2005).

Plaintiffs likewise cannot maintain a substantive due process cause of action based upon their right to contract. "It is the liberty to pursue a calling or occupation, and not the right to a

specific job, that is secured by the Fourteenth Amendment." *Bernard v. United Twp. Hich Sch. Dist. No. 30*, 5 F.3d 1090, 1092 (7th Cir. 1993). Accordingly, "the loss of one's job and certain future opportunities does not constitute deprivation of a protected liberty interest. Indeed, it is only where the defendant's action effectively precludes the plaintiff from practicing his trade with all employers or customers that the plaintiff's liberty interest in pursuing his occupation is infringed." *Jackson v. Heh*, 215 F.3d 1326, *6 (6th Cir. 2000). In the instant case, no alleged acts by the Defendants prevented the Plaintiffs from pursuing other towing contracts. Thus, no substantive due process violation lies for the Plaintiffs in the instant action based upon their freedom to contract.

Further, with respect to their right to reputation, Plaintiffs must establish that the Defendants made false, stigmatizing statements about them. *Bessent v. Dyersburg State Community College*, 224 Fed. Appx. 476, 480 (6th Cir. 2007). No such allegations have been made in the instant case, and therefore Plaintiffs cannot maintain a substantive due process violation based upon alleged infringement on their liberty interest in their respective reputations.

Finally, as explained *supra*, Plaintiffs have no legitimate property interest in remaining on the No-Preference List, as explained in *Lucas v. Monroe County*, 203 F.3d 964 (6th Cir. 2000). Thus, Plaintiffs have not alleged a protected liberty or property interest being infringed upon by the Defendants, and summary judgment on Plaintiffs' substantive due process cause of action [Count XII] is therefore **GRANTED**.

  IV. <u>Defendants Did Not Violate Plaintiff Petroff's Fifth Amendment Right Against Self-Incrimination</u>.

Petroff argues that the Defendants violated his Fifth Amendment Right Against Self-

Incrimination when they requested Petroff appear for questioning in connection with their investigation of his stolen vehicle. No such Fifth Amendment violation exists in this case.

The Fifth Amendment requires that no person shall be compelled in any criminal case to be a witness against themselves. *See Chavez v. Martinez*, 538 U.S. 760 (2003). However, there must be a criminal case or at least the initiation of legal proceedings in order for that privilege to be asserted. *Id*. at 767. Mere police questioning does not invoke the right. *Id*.

When the Defendants requested that Petroff appear for questioning, there was no criminal case even being contemplated against Petroff. Furthermore, no criminal case has been instituted, nor has a criminal investigation been opened, against Petroff surrounding the events in question. As such, Petroff has not demonstrated a genuine issue of material fact regarding his Fifth Amendment cause of action [Count II], and the Court therefore **GRANTS** summary judgment with respect to that count.

    V. <u>Defendants Did Not Violate Plaintiffs' First and Fourteenth Amendment Rights of Free Association</u>.

In Count VI of their Amended Complaint [Doc. No. 36], Plaintiffs claim that the Defendants infringed upon their First and Fourteenth Amendment rights to free association. The right of intimate association protects "relationships characterized by relative smallness, a high degree of selectivity in decisions to begin and maintain the affiliation, and seclusion from others in critical aspects of the relationship." *Beecham v. Henderson County*, 422 F.3d 372, 375 (6th Cir. 2005). Plaintiffs assert that the Defendants interfered with their relationship due to their removal from the No-Preference List because of Petroff's failure to cooperate in a criminal investigation. These allegations are insufficient to state a valid cause of action.

Intimate association claims have two potential standards of review. "A 'direct and substantial interference' with intimate associations is subject to strict scrutiny, while lesser interferences are subject to rational basis review." *Pucci v. Michigan Supreme Court*, 601 F.Supp.2d 886 (E.D. Mich. 2009) (quoting *Anderson v. City of Lavergne*, 371 F.3d 879, 882 (6th Cir. 2004)). A rational basis review is appropriate in the instant case.

A "direct and substantial interference" is only found ". . . where those affected by the rule are absolutely or largely prevented from forming intimate associations with a large portion of the otherwise eligible population of people with whom they could form intimate associations." *Anderson*, 371 F.3d at 882. Such is not the case here: Plaintiffs have not alleged that they were prevented from maintaining a relationship and have continued their relationship throughout the course of this litigation. [*See* Petroff Dep., Def.'s Ex. 1, Doc. No. 46, pp. 104, 111]. As such, Plaintiffs' claims are only subject to rational basis review.

"[R]ational basis review is satisfied so long as there is a plausible policy reason for the decision, and it is entirely irrelevant for constitutional purposes whether the plausible reason in fact motivated the policymaker." *Pucci*, 601 F.Supp.2d at 904. Here, the Defendants removed Plaintiffs from the No-Preference List because of concerns with the Plaintiffs' integrity, coupled with the past problems of customer complaints, jumping tows and interfering with crime scenes. These constitute plausible policy reasons for removing Plaintiffs from the No-Preference List. As such, summary judgment is **GRANTED** on Plaintiffs' intimate association claim [Count VI].

VI. <u>Defendants Enjoy Immunity From Plaintiffs' State-Law Tort Claims</u>.

As a municipality within the State of Michigan, the County of Genesee enjoys broad immunity from Michigan state law tort claims:

> except as otherwise provided in this act, the governmental agency is immune from tort liability *if the governmental agency is engaged in the exercise or discharge of a governmental function*.

M.C.L. § 961.1407(1) (emphasis added). It is well-settled that the operation of a law enforcement agency is a governmental function. *See, e.g., Williams v. Payne*, 73 F.Supp.2d 785, 794 (E.D. Mich. 1999); *Pohutski v. City of Allen Park*, 465 Mich. 675 (2002). Plaintiffs have likewise not demonstrated that an exception to Michigan's governmental immunity statute applies. The County is therefore immune from the Plaintiffs' state law tort claims.

Likewise, the individual defendants in this lawsuit are similarly immune from Plaintiffs' state law tort claims. In *Odom v. Wayne County*, 482 Mich. 459 (2008), the Michigan Supreme Court explained what a state employee must show to be immune from state law tort suits:

> To be entitled to governmental immunity, defendant must establish that she was acting in the course of her employment and at least reasonably believed that she was acting within the scope of her authority, that her actions were discretionary in nature, and that she acted in good faith.

*Odom*, 482 Mich. at 228-29.

In this case, the individual defendants were acting in the course of their employment in terminating the Plaintiffs from the No-Preference List. Further, all evidence proffered in this case demonstrates that this termination was within the discretion of those individuals who made the decision to terminate the Plaintiffs from the No-Preference List. Finally, the evidence in this case demonstrates that the decision to terminate the Plaintiffs from the No-Preference List was made in good faith, and only finalized after giving the Plaintiffs multiple opportunities to conform their conduct to expected standards.

As such, the individual defendants in this suit are entitled to immunity from Plaintiffs'

state law tort causes of action. Therefore, the Court **GRANTS** summary judgment on all of Plaintiffs' state-law tort claims [Counts III-V, VII, X, & XI].

    IX.   Defendants Did Not Violate Plaintiffs' Rights Under the Michigan Constitution.

In their Amended Complaint [Doc. No. 36], Plaintiffs bring causes of action against the Defendants for violations of Article I, § 17 of the Michigan Constitution [Counts XIII, XIV]. These claims are barred as a matter of law, and thus ripe for summary judgment.

Causes of action under the Michigan Constitution are limited to cases in which the state would not be liable due to the immunity conferred upon it by the Eleventh Amendment to the U.S. Constitution. *See Pleasant v. Zamieski*, 895 F.2d 272, 278 (6th Cir. 1990). Actions against municipalities and their employees have been specifically held not to fall under this extremely narrow cause of action:

> . . . [C]laims of violation of rights protected by the Michigan Constitution are not appropriate *where a municipality or municipal employee is the alleged wrongdoer*; such claims are only appropriate in the context of an alleged wrongdoing by the State or a state employee. . . .

*Fruman v. City of Detroit*, 1 F.Supp.2d 665, 675 (E.D. Mich. 1998) (emphasis added). In this case, the County of Genesee is a municipal subdivision of the State of Michigan, not the state itself. Furthermore, the individual defendants named in this suit are employees of Genesee County. As such, these Defendants are not subject to suits under the Michigan Constitution, and summary judgment on Plaintiff's claims for a violation of the Michigan Constitution [Counts XIII, XIV] is therefore **GRANTED**.

    X.   Plaintiffs' Motions for Summary Judgment are Moot.

As explained *supra*, summary judgment in favor of the Defendants is proper with respect

to each and every cause of action in Plaintiffs' Amended Complaint [Doc. No. 36]. As such, the Court **DENIES AS MOOT** the Plaintiffs' motions for summary judgment [Doc. Nos. 21, 47].

CONCLUSION

For the reasons explained above, the Court **GRANTS** the Defendants' motions for summary judgment [Doc. Nos. 20 & 46], **DENIES AS MOOT** the Plaintiffs' motions for partial summary judgment [Doc. Nos. 21 & 47], and **DISMISSES** this case in its entirety.

**IT IS SO ORDERED**.

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated: September 15, 2009

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 15, 2009, by electronic and/or ordinary mail.

S/Jennifer Hernandez
Case Manager